**In re GRAND JURY PROCEEDINGS.**

**Appeal of UNITED STATES of America.**

**No. 88–2058.**

United States Court of Appeals,
First Circuit.

Heard April 3, 1989.
Decided May 19, 1989.

See also 700 F.Supp. 626.

Jose R. Gaztambide, Asst. U.S. Atty., Crim. Div., Rio Piedras, P.R. with whom Charles E. Fitzwilliam, Acting U.S. Atty., San Juan, P.R., was on brief, for the U.S.

Roberto Buso Aboy with whom Jose A. Fuentes Agostini, San Juan, P.R., was on brief, for Francisco Pujol.

Before CAMPBELL, Chief Judge, BOWNES and BREYER, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

This is an appeal from the conviction of an Assistant United States Attorney ("AUSA") for contempt of court. We affirm.

The contempt grew out of the grand jury investigation of one Francisco Pujol, conducted by the office of the United States Attorney for the District of Puerto Rico. After the investigation began, Pujol filed a claim of unethical conduct before the Superior Court of Puerto Rico against an attorney, Francisco Lopez Romo. Francisco Lopez Romo is the brother of the United States Attorney for Puerto Rico, Daniel Lopez Romo. The latter recused himself from the Pujol investigation on October 3, 1988. Pujol was scheduled to testify before the grand jury on October 5, 1988. On that morning, Pujol filed a motion to disqualify the entire United States Attorney's office from investigating him and to have a special prosecutor appointed. Pujol refused to testify about anything but his personal background until the court ruled on his motion.

AUSA Ricardo Pesquera, who was conducting the investigation, AUSA Jose Gaztambide, and three attorneys representing Pujol, went together to the chambers of a district judge for the District of Puerto Rico and requested an immediate hearing. The court granted the hearing, which lasted for about ten minutes. The Clerk of the District Court also was present. The court reviewed the motion to disqualify the United States Attorney's office, heard argument from both sides, verbally ruled that the grand jury proceedings were stayed until further order, requested memoranda of law from the parties, and scheduled the motion for oral argument on October 11, 1988. Before leaving, AUSA Pesquera made inquiry of the judge and received an answer; this exchange created the principal disputed issue in the later hearing for contempt of the order.

There was no court reporter present during the in-chambers hearing. The clerk related the events to a courtroom deputy, who prepared minutes of the proceeding. The minutes, dated October 5, 1988, provide:

Case called for hearing on Mr. Francisco Pujol's motion requesting to disqualify U.S. Atty's Office from the prosecution of this case and requesting an independent special prosecutor. Statements of parties heard. Ct. stays the proceedings before the grand jury until further order of the ct. and sets petitioner's motion for hearing....

The district court's docket sheet indicates that the minutes were docketed on the same day, October 5, with the notation "Ct stays the proceedings before the GJ [grand jury] until further order of the ct...." Consistent with the district court clerk's usual procedure in such matters, the clerk did not send a copy of the minutes to either party. However, the minutes were available in the clerk's office to the parties. Neither Pesquera nor anyone from the United States Attorney's Office examined the minutes or made further inquiry of the judge or clerk as to the order's terms.

Notwithstanding the court's order, on the following day, October 6, 1988, AUSA Pesquera continued to conduct the grand jury hearing, questioning four more witnesses who provided testimony relevant to the investigation of Pujol. On October 7, 1988, Pujol filed a motion seeking sanctions against the government for violating the court's order staying the grand jury proceedings. The district court thereupon issued and had served a show cause order, which provided:

Upon consideration of the motion filed today by petitioner Francisco Pujol, United States Attorney Daniel Lopez Romo and the Assistant U.S. Attorney Ricardo Pesquera are hereby ordered to appear before the undersigned on October 11, 1988 at 10:00 a.m. so that this court may determine what proceedings, if any, took place before the grand jury in violation of our Order of October 5, 1988, staying those proceedings.

If proceedings took place after the issuance of our order, then Mr. Lopez Romo and Mr. Pesquera shall show cause, if any there be, why they should not be held in contempt of court for violation of the court's order....

On the morning of October 11, 1988, the court conducted a hearing on both the matter of the violation of its earlier order and Pujol's motion to disqualify the United States Attorney's office. Present at the hearing were United States Attorney Lopez Romo, AUSA Pesquera, AUSA Gaztambide, Acting United States Attorney Charles Fitzwilliam (because Lopez Romo had recused himself), and two attorneys representing Pujol. The clerk of the District Court was also present.

The court turned first to the order to show cause, announcing that the proceedings were criminal in nature. The court asked whether either AUSA Pesquera or United States Attorney Lopez Romo wished to be represented by counsel. Lopez Romo responded that he would proceed pro se. Pesquera did not reply. The court then noted that there appeared to be no dispute over the fact that AUSA Pesquera had continued with the grand jury hearing on the day following the stay order and asked AUSA Pesquera to explain why he should not be held in contempt for violating the stay. Pesquera explained that he had misunderstood the order. According to Pesquera, Pujol's reason for seeking a court order had been to prevent the government from forcing Pujol himself to testify before the grand jury. Pesquera had believed, therefore, that the court's order was intended to stay only Pujol's examination, not the entire proceeding before the grand jury. Pujol's attorneys volunteered that they had understood the order to stay the entire grand jury investigation of Pujol, because that was the only way to safeguard Pujol's rights until obtaining a ruling on his motion seeking an independent prosecutor.

The court then asked Pesquera about the clarification he had sought at the earlier meeting. The court recalled Pesquera asking, "Then does that mean that the pro-

ceedings before the Grand Jury are stayed?", and that the court responded "Yes. That means that the proceedings before the Grand Jury are stayed." Pesquera stated that he remembered events differently—that he had asked, "This means we can not continue with the interrogation of Mr. Pujol before the Grand Jury?", and that the court had answered, yes. Mr. Masini, the clerk of the district court, then testified under oath that Pesquera's question was, "Should I understand, Judge, that the proceedings before the grand jury are stayed?", and that the court responded affirmatively. The court gave Mr. Lopez Romo an opportunity to cross-examine Mr. Masini, but limited cross-examination to the topic of Mr. Masini's recollection of the nature of AUSA Pesquera's request for clarification. AUSA Pesquera made an offer of proof as to his own, different, recollection of his question. The other AUSA present, Mr. Gaztambide, also told the court that he had misunderstood the court's verbal order.

The court found Mr. Pesquera to be in contempt of court, and fined him $300.[1]

## I.

■ An initial question concerns our appellate jurisdiction. The notice of appeal in this case was filed on behalf of "the United States of America." This is incorrect. Even though Pesquera committed the alleged contempt in the course of his duties as an Assistant United States Attorney, the court held Pesquera himself in contempt.[2] It did not hold the United States or any agency of the United States in contempt. The court dismissed the charge against the United States Attorney himself.

Since the United States was not the contemnor, it does not have standing to bring this appeal in its own name. An appellant has standing to appeal only if privy to the record and aggrieved by the order appealed from. 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* ¶ 203.06 (2d ed. 1988) (describing requirements embodied in Fed.R.App.P. 3). Ordinarily, this principle would allow an appeal only by the parties of record at the time the challenged judgment was entered. *Id.* Since the judgment here ran against Pesquera individually, the United States Attorney's office was aggrieved by the judgment only in the sense that one of its own was cited for contempt; it was not a party defendant below.

■ While the United States is not the proper appellant, there remains the question whether the notice of appeal was sufficient to give fair notice that Pesquera himself intended to appeal. We believe it was. Federal Rule of Appellate Procedure 3(c) details the required elements for a notice of appeal. The rule provides that the notice of appeal "shall specify the party or parties taking the appeal" but that an appeal "shall not be dismissed for informality of form or title of the notice of appeal." Fed.R.App.P. 3(c). The purpose of the rule's specificity requirement "is to provide notice both to the opposition and to the court of the [appellant's] identity," so that the "appellee and the court [can] determine with certitude whether a ... party ... should be bound by an adverse judgment or held liable for costs or sanctions." *Torres v. Oakland Scavenger Co.,* —— U.S. ——, 108 S.Ct. 2405, 2409, 101 L.Ed.2d 285 (1988). While the Supreme Court recently has emphasized that parties must comply with the specificity requirement of Rule 3(c) by naming or otherwise designating the party or parties taking the appeal, it also has said that the requirement "should

---

1. The court vacated and set aside the show cause order as to United States Attorney Lopez Romo. Mr. Lopez Romo explained that he had known nothing about the court's order, having recused himself from the case on October 3, 1988.

2. The district court's order provides:
   We now find that Mr. Ricardo Pesquera's conduct was sufficient to warrant a finding of contempt for willfully disobeying a lawful order of this court. Mr. Pesquera's conduct is sufficient to support an adjudication for contempt under 18 U.S.C. [§] 401(3). *See also* Rule 42(b) of the Federal Rules of Criminal Procedure. Consequently, Mr. Ricardo Pesquera is hereby found guilty beyond a reasonable doubt of contempt of court and is ordered to pay a fine of $300.

be liberally construed and ... 'mere technicalities' should not stand in the way of consideration of a case on its merits." *Torres*, 108 S.Ct. at 2408–09.

The notice of appeal in this case clearly manifests Pesquera's intent to appeal. The notice is captioned "In the matter of Assistant United States Attorney Ricardo R. Pesquera," and the judgment appealed from is specified as "the judgment of contempt entered ... against Assistant United States Attorney Ricardo R. Pesquera on October 11, 1988...." The signature block on the notice of appeal contains the typed name of the Acting United States Attorney, Charles Fitzwilliam, followed by Pesquera's signature, and Pesquera's typed official signature block in his capacity as an Assistant United States Attorney. This is not a multi-party case where the notice of appeal fails to make clear which party or parties intend to appeal, thereby providing notice so vague as to deprive the court of jurisdiction over the unnamed parties' appeals. *Cf. Torres*, 108 S.Ct. at 2409. The problem with Pesquera's notice of appeal is an "informality of form or title" which should not lead to dismissal. *See* Fed.R.App.P. 3(c). The purposes of Rule 3(c) will not be compromised if we exercise jurisdiction over this appeal. As Pesquera signed the notice of appeal, we need have no qualms about holding Pesquera to any judgment rendered by this court, including liability for costs or sanctions. *Cf. Covington v. Allsbrook*, 636 F.2d 63 (4th Cir.1980) (in appeal of three pro se prisoners, appeal of two unnamed parties dismissed where notice of appeal signed by only one; since lone pro se signatory could not represent interests of the other parties, there was no assurance that unnamed parties who did not sign the notice of appeal intended to appeal), *cert. denied*, 451 U.S. 914, 101 S.Ct. 1990, 68 L.Ed.2d 305 (1981). We conclude that we have jurisdiction over Pesquera's appeal and turn to the merits of his case.

## II.

"A contempt of court is a willful disregard of the authority of the court. The object of a criminal contempt proceeding is to vindicate the authority of the court and to deter similar derelictions." 3 C.A. Wright, *Federal Practice and Procedure* § 702, at 809 (2d ed. 1982) (footnotes omitted). Criminal contempt proceedings are governed by Federal Rule of Criminal Procedure 42.[3]

Appellant Pesquera contends that the contempt proceeding violated the due process clause of the federal Constitution and Rule 42(b). He says that the show cause order provided insufficient notice of the criminal nature of the charge, that he was allowed insufficient time to prepare a defense, that no evidence was presented other than clerk Masini's "self-serving" testimony, and that the proceeding should have been conducted before a judge other than the one who issued the order he is alleged to have violated.

A threshold problem is that neither Pesquera nor any of the other attorneys for the United States Attorney's office who were present raised these contentions at the hearing in the district court.

**3.** The rule provides:

(a) **Summary Disposition.** A criminal contempt may be punished summarily if the judge certifies that the judge saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.

(b) **Disposition Upon Notice and Hearing.** A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to a trial by jury in any case in which an act of Congress so provides. The defendant is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing the punishment.

Thus when told the contempt charge was criminal, Pesquera did not protest that he had thought otherwise.[4] Likewise Pesquera did not inform the court that he had lacked time to prepare a proper defense, nor did he file a motion seeking recusal of the judge.[5]

Pesquera was, to be sure, uncounselled. He was asked by the judge, however, if he wished counsel, and he did not request counsel. As an Assistant United States Attorney, Pesquera was knowledgeable of criminal procedure and the rights of an accused and hence was professionally aware both that he was constitutionally entitled to counsel and of the advantages of having counsel. *See United States v. Campbell,* 874 F.2d 838, 846 (1st Cir.1989). He was accompanied by two other Assistant United States Attorneys and the United States Attorney himself, who steadfastly supported his position. We conclude that, absent plain error, Pesquera's failure to object in the district court deprived him of any right to raise these matters on appeal. *See United States v. Griffin,* 818 F.2d 97, 99–100 (1st Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 137, 98 L.Ed.2d 94 (1987); *United States v. Krynicki,* 689 F.2d 289, 291 (1st Cir.1982). We do not find plain error. While one can imagine a more deliberate proceeding, we see no basic unfairness, nor can we fault the finding of contempt and the imposition of a $300 fine for the conduct in question.

■ We turn next to Pesquera's contention that the district court erred by not

---

4. If Pesquera had objected on this ground, he would have been unlikely to prevail. In the absence of prejudice to the defendant, a show cause order's failure to specify criminal, rather than civil, contempt is not violative of Rule 42(b). *United States v. United Mine Workers of America,* 330 U.S. 258, 297–98, 67 S.Ct. 677, 697–98, 91 L.Ed. 884 (1947). Pesquera and his associates in the United States Attorney's office should have known that a charge of contempt of this nature was criminal.

5. Even if Pesquera had sought the judge's recusal, we do not think the judge was required to step down here. Federal Rule of Criminal Procedure 42(b) provides for disqualification of a judge in out-of-court contempt proceedings only if "the contempt charged involves disrespect to or criticism of" the judge, which was not the situation in this case. Nor was this a situation where the judge's knowledge of disputed evidentiary facts required his recusal. *See* 28 U.S.C. § 455(b) (1982) (judge should recuse himself in circumstances where, *inter alia,* "he has personal bias or prejudice concerning the party, or personal knowledge of disputed evidentiary facts concerning the proceeding"). The bias or knowledge necessary to disqualify a judge must be "personal and it must stem from an *extra-judicial source.* Adverse attitudes toward a party or witness *formed on the basis of the evidence before the court* do not constitute disqualifying bias and prejudice." *In re Cooper,* 821 F.2d 833, 838 (1st Cir.1987) (citing *United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966)) (emphasis added). In this case, while the judge's perception of what occurred during the disputed exchange between himself and Pesquera on October 5 came from his own "personal knowledge," his knowledge was not extra-judicial. It related to what had transpired at a court proceeding the judge was conducting, of which a judge is entitled to be cognizant. *See Ex Parte Terry,* 128 U.S. 289, 304–05, 9 S.Ct. 77, 79–80, 32 L.Ed. 405 (1888) (cited in *Ungar v. Sarafite,* 376 U.S. 575, 602, 84 S.Ct. 841, 856, 11 L.Ed.2d 921 (1964) (Douglas, J., dissenting)).

Nor was recusal required because the judge's "impartiality might reasonably be questioned," 28 U.S.C. § 455(a), or because the "contumacious conduct, though short of personal attack ..., provoke[d the] trial judge and so embroil[ed] him in controversy that he [could not] 'hold the balance nice, clear and true between the state and the accused.'" *Taylor v. Hayes,* 418 U.S. 488, 501, 94 S.Ct. 2697, 2704, 41 L.Ed. 2d 897 (1974) (reversing contempt conviction on the ground that the judge became embroiled in a running controversy with the contemnor) (quoting *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927)). A judge will be disqualified only when it is clear that the controversy between the judge and the contemnor has become so heated that the judge's personal feelings will prevent him from acting impartially. "We cannot assume that judges are so irascible and sensitive that they cannot fairly and impartially deal with resistance to their authority or with highly charged arguments about the soundness of their decisions." *Ungar v. Sarafite,* 376 U.S. at 584, 84 S.Ct. at 847. The controversy here was over the content of Pesquera's question and the judge's response concerning clarification of the judge's order; the judge was entitled to rely on his own understanding of what was said at the earlier hearing. The proceedings were conducted decorously; the judge in no way "became embroiled in intemperate wrangling with the [contemnor]." *Ungar,* 376 U.S. at 585, 84 S.Ct. at 847. Therefore, the judge was not obliged to disqualify himself from presiding over Pesquera's contempt hearing.

appointing a prosecutor to conduct the contempt proceeding.[6] While the actions constituting this contempt took place at a grand jury proceeding, which occurs under general superintendence of the district court, the contempt was not committed in the court's actual presence. It was not, therefore, subject to the more relaxed procedures found in Fed.R.Crim.P. 42(a), which provide that a criminal contempt may be punished summarily if the judge certifies that the judge saw or heard the conduct constituting the contempt. In a summary contempt proceeding there is no doubt the judge may combine the functions of prosecutor, jury and judge. *See In re Gustafson,* 650 F.2d 1017, 1022 (9th Cir. 1981). The rationale for curtailing the usual criminal procedures in the event of in-court contempt is that a court must be able to maintain order to assure the integrity of court proceedings. The same degree of urgency is not inherent in punishment of contempts committed outside the presence of the court, since out-of-court contempts do not disrupt the judge's handling of ongoing proceedings over which he is presiding. Accordingly, there exist greater procedural protections, similar to those for other criminal defendants, for persons charged with out-of-court contempts. *See Young v. United States ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 797–98, 107 S.Ct. 2124, 2132–33, 95 L.Ed.2d 740 (1987) (listing procedures afforded to defendants charged with criminal contempt, including the rights to be presumed innocent, to be found guilty beyond a reasonable doubt, to refuse to testify against themselves, to be advised of charges, to be afforded a reasonable opportunity to respond to charges,

to have the assistance of counsel, to call witnesses, to have a public trial before an unbiased judge, and to have a jury trial for serious contempts).

Whether the court must appoint a prosecutor in all out-of-court contempts has yet to be decided by the Supreme Court. Fed. R.Crim.P. 42(b), which prescribes the procedures for out-of-court contempts, does not say that a prosecutor is always required, but it does call for notice either in open court or "on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest." Fed. R.Crim.P. 42(b). The Supreme Court recently has held that this language in Rule 42(b) presupposes that courts have the inherent power to appoint private attorneys to prosecute contempts, as well as to ask the United States Attorney to prosecute. *Young,* 481 U.S. at 801, 107 S.Ct. at 2134. In *Young,* the Court held that in selecting a private attorney to prosecute, courts may not appoint an interested private party's own attorney. Such an appointment creates a conflict between the attorney's role as advocate for his client and his role as impartial prosecutor. *Id.* at 802–09, 107 S.Ct. at 2135–38. In ruling that such an arrangement constituted serious, perhaps plain, error[7] the Court stressed the importance to the defendant that the prosecutor be impartial so as to evenhandedly exercise the tremendous discretion ordinarily afforded prosecutors. *Id.*

In *Young,* the Court did not consider whether a court may ever conduct criminal contempt proceedings without first appointing any prosecutor at all. It can be argued

---

**6.** Pujol's attorneys who were present at the hearing and had originally informed the court of Pesquera's actions were not designated as prosecutors, and could not properly have acted in that capacity. *Young v. United States ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987). They did not play a major role during the hearing. Thereafter, Pujol's attorneys filed a friend of the court brief, and, in that capacity, argued on appeal in favor of the contempt finding. We question now whether we should have allowed them to argue in that role, but if doing so was error, it was harmless.

**7.** Four justices would have ruled that harmless error analysis could not be applied to the appointment of an interested party's attorney to prosecute a charge of criminal contempt. *Young,* 481 U.S. at 809–14, 107 S.Ct. at 2138–41. A fifth, Justice Scalia, would have ruled that courts never may appoint private prosecutors, citing concerns about the separation of the executive branch's power to enforce laws and the judicial branch's limited power to issue orders only in cases brought before the courts. *Id.* at 815–25, 107 S.Ct. at 2141–47 (Scalia, J., concurring in judgment).

that, lacking a prosecutor, the judge himself must fill the role, leading to an unacceptable confusion of roles and a violation of the separation of powers. *See Young,* 481 U.S. at 815–25, 107 S.Ct. at 2141–47 (Scalia, J., concurring in judgment). Although the question is not free from doubt, we believe that not all out-of-court contempt proceedings are fatally flawed by the failure to appoint a prosecutor. Where, as here, the judge is impartial and the evidence is so simple that the judge is not diverted from the role of impartial judge and factfinder, we are not convinced that a prosecutor must be appointed. *See People v. Carlucci,* 23 Cal.3d 249, 590 P.2d 15, 152 Cal.Rptr. 439 (1979) (prosecutor not required for traffic infractions). *Cf. Figueroa Ruiz v. Delgado,* 359 F.2d 718 (1st Cir.1966) (holding unconstitutional procedure in the Puerto Rico local courts where no prosecutor was appointed, and the judge acted regularly in place of any prosecutor, calling and examining all prosecution witnesses and cross-examining defense witnesses). This is not the same situation as in *Young,* where the prosecutor was biased, and hence might be expected to proceed in total disregard of a defendant's legitimate interests. It is true that the absence of a prosecutor eliminates for the defendant the possibility that a separate authority will exercise its discretion *not* to prosecute. This benefit is largely illusory, however, in a case such as the present where there is no dispute as to defendant's actual conduct. In a contempt, moreover, the court retains the power to appoint a private prosecutor even if the United States Attorney first has been asked and has declined to prosecute. *Young,* 481 U.S. at 801, 107 S.Ct. at 2134. And, where the court is impartial, it may be expected to call off the contempt proceeding if justice requires, as in fact it did in the charge against the United States Attorney himself.

The sole issue before the court here was the willfulness of Pesquera's otherwise contemptuous behavior. It was not contested that Pesquera had examined witnesses before the grand jury after the judge's order, and it was clear that the order, as set out in both the minutes and

docket on the day the order was issued, purported to stay the grand jury proceedings. All that remained was for Pesquera to explain why matters were not as they appeared—which he tried to do by asserting that he had misunderstood the order and by referring to a statement by the judge that supposedly had restricted the scope of the order. The judge noted his own different recollection of that statement. We see little that the presence of a prosecutor would have added to Pesquera's position.

■ While we uphold this proceeding, we believe that it is preferable for a court to appoint a prosecutor to conduct out-of-court criminal contempt proceedings under Rule 42(b), and we warn that failure to do so could easily create a serious problem in a different case. In out-of-court criminal contempts, a court should routinely appoint a prosecutor. We hold, nonetheless, that it was not reversible error in these particular circumstances for the court to proceed as it did.

■ We dispose quickly of Pesquera's remaining arguments. There is no merit to Pesquera's claim that there was insufficient evidence to warrant the court's contempt finding. The evidence of the court's order and Pesquera's willful violation is substantial. To be sure, Pesquera insists he misunderstood the order, but the court was not required to believe him, especially since, if Pesquera was confused about the order, he had the means—by simple inquiry of the clerk or consultation of the minutes, which were available for inspection in the clerk's office—to have clarified matters.

■ There is no merit either to Pesquera's argument that the stay order had no force because the court subsequently lifted the temporary stay, finding no basis for staying the grand jury proceeding permanently. The court's later ruling was that it would not permanently disqualify the United States Attorney's office from conducting the investigation against Pujol because there was insufficient indication that the office could not impartially conduct the in-

vestigation.[8] It is no defense to a charge of criminal contempt that the violated order was subsequently revoked. The order must be obeyed until " 'reversed by orderly and proper proceedings.' " *See Maness v. Meyers,* 419 U.S. 449, 459, 95 S.Ct. 584, 591, 42 L.Ed.2d 574 (1975) (quoting *United States v. Mine Workers of America,* 330 U.S. at 293, 67 S.Ct. at 696).

*Affirmed.*

**8.** The opinion stated:

It should be noted that the cases which have allowed judicial intervention at the preindictment, investigatory stage, have required that serious abuses first be shown. No such show-ing has been made here. Clearly, petitioner's conclusory allegations are insufficient to warrant the court's intervention through the use of its supervisory powers....