**[PUBLISH]**

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT

No. 97-8545

D.C. Docket No. 1:96-CV-735-MHS

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
12/03/98
THOMAS K. KAHN
CLERK

IN RE:


RUSSELL REED,

                              Contemnor-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(December 3, 1998)**

Before HATCHETT, Chief Judge, HULL, Circuit Judge, and LENARD[*], District Judge.

HATCHETT, Chief Judge:

_____

[*] Honorable Joan A. Lenard, U.S. District Judge for the Southern District of Florida, sitting by designation.

In this appeal of a criminal contempt judgment, we hold that the district court did not err in failing to appoint an independent prosecutor in light of the appellant's waiver of the right to have an independent prosecutor appointed.

## I. FACTS

Minority shareholders of General Builders Corporation (GBC) filed a derivative, class action lawsuit against former GBC majority shareholders and Brand Management Group, Inc. (Brand), the current GBC majority shareholders. Appellant Russell Reed is an owner of Brand. The underlying lawsuit alleged that Brand and Reed breached their fiduciary duties and engaged in fraud and corporate waste. Following removal of the original lawsuit to federal court, the minority shareholders moved for the appointment of a receiver to operate GBC. In a September 5, 1996 consent order, all parties agreed to Ray Bowden's appointment as an independent company manager for GBC. The consent order granted Bowden full authority to manage the affairs of GBC. The consent order also gave Bowden sole authority to write company checks, enter agreements binding the company, convey or encumber company properties, elevate, hire and fire company officers, employees and consultants and to otherwise obligate GBC. Finally, the consent order suspended the board of director's authority during Bowden's appointment.

On December 16, 1996, Reed signed and filed a bankruptcy petition on behalf of GBC as "chairman/CEO" of the company. On December 19, 1996, the minority shareholders filed a motion for an order to show cause to determine why the court should not hold Reed in contempt for having "substantially interfered with the business" of GBC in that he signed and filed the bankruptcy petition on GBC's behalf. Specifically, the minority shareholders' motion alleged that Reed violated the consent order in: (1) hiring an attorney to represent GBC in connection

2

with the bankruptcy proceeding; (2) filing a Chapter 11 bankruptcy petition on behalf of GBC; (3) sending out a notice firing one GBC employee and requiring another to report to Reed; and (4) committing numerous other acts purporting to act on behalf of GBC. In the alternative, the minority shareholders requested injunctive relief.

At a January 8, 1997 hearing, the district court advised that it would consider the contempt action as a criminal contempt pursuant to 18 U.S.C. § 401, and that it would sever the issues of contempt and injunctive relief. The court postponed the hearing on the contempt motion to allow Reed more time to prepare and to hire counsel specializing in criminal law. On January 9, 1997, the district court entered an order granting injunctive relief against Reed, authorizing company manager Bowden to dismiss the bankruptcy proceeding filed on behalf of GBC, and scheduling a non-jury proceeding to determine whether Reed should be "held in criminal contempt for his willful and wanton violation" of the September 5, 1996 consent order.

At the beginning of the criminal contempt hearing, defense counsel stated that Reed waived the appointment of an independent prosecutor. The contempt hearing proceeded with the minority shareholders' counsel assuming the prosecutorial role. At the conclusion of the hearing, the district court entered an order finding that Reed "wilfully violated the September 5, consent Order by filing for bankruptcy on GBC's behalf and, pursuant to the bankruptcy action, sending letters to GBC employees, including the Court-Appointed Receiver in charge of GBC, purporting to terminate these individuals' employment." The district court sentenced Reed to four months' imprisonment, the execution of which the court stayed pending resolution of this appeal.

## II. STANDARD OF REVIEW

3

Generally, this court will not address an issue raised for the first time on appeal. See United States v. McAllister, 77 F.3d 387, 389 (11th Cir. 1996). Application of this rule, however, is at the discretion of the appellate court. See Lattimore v. Oman Constr., 868 F.2d 437, 439 (11th Cir. 1989) (discretion to review pure question of law or to avoid injustice). The district court's rulings on law are subject to de novo review. United States v. Young, 107 F.3d 903 (D.C. Cir. 1997).

## III.  ISSUES

The issues we discuss are whether the district court violated Reed's procedural due process and the Federal Rules of Criminal Procedure 42(b) in:  (1) failing to appoint an independent prosecutor to prosecute the criminal contempt proceedings; and (2) failing to afford proper notice and a reasonable time to prepare for the criminal contempt proceedings.

## IV.  DISCUSSION

### A.  Failure to Appoint Independent Prosecutor

Reed first contends that the district court erred in failing to appoint an independent prosecutor to pursue his criminal contempt proceeding.  The government counters that Reed's argument fails not only because he neglected to establish the entitlement to such an appointment, but also because he waived any right to the appointment of an independent prosecutor when he affirmatively chose to proceed without one.

Federal Rules of Criminal Procedure 42(b), which governs indirect, out of court criminal contempt, provides in part:

Rule 42.  Criminal Contempt

. . . .

4

(b) Disposition Upon Notice and Hearing.  A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice.  The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such.  The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest.

Fed. R. Crim. P. 42(b).  Through its terms, rule 42(b) does not require the appointment of an independent prosecutor to pursue an indirect, out of court criminal contempt citation.

In Young v. United States ex rel. Vuitton et Fils S.A., the Supreme Court held that counsel for a party that is the beneficiary of a court order may not be appointed as prosecutor in a contempt action alleging a violation of that order.  481 U.S. 787, 809 (1987).  The Young Court instructed federal courts to request that the United States Attorney's Office prosecute out of court criminal contempt charges, and, if the United States Attorney declines, to appoint as a special prosecutor a private lawyer other than the lawyer for an interested party.  481 U.S. at 801-02.  Young further held that a district court's appointment of counsel for an interested party as a contempt prosecutor is not subject to a harmless error analysis.  481 U.S. at 810.

Since the Supreme Court's decision in Young, the two circuit courts of appeals to address the issue have split over whether rule 42(b), or the Supreme Court's decision in Young, requires the appointment of an independent prosecutor in every out of court criminal contempt action.  For example, in In re Grand Jury Proceedings, the First Circuit observed that Young did not decide whether the district court must appoint a prosecutor in all out of court contempt:

> In Young, the [Supreme] Court did not consider whether a court may ever conduct criminal contempt proceedings without first appointing any prosecutor at all.  It can be argued that, lacking a prosecutor, the judge himself must fill the role, leading to an unacceptable confusion of roles and a violation of the separation of powers.  See Young, 481 U.S. at 815-25, 107 S. Ct. at 2141-47

5

(Scalia, J., concurring in judgment). Although the question is not free from doubt, we believe that not all out of court contempt proceedings are fatally flawed by the failure to appoint a prosecutor. Where, as here, the judge is impartial and the evidence is so simple that the judge is not diverted from the role of impartial judge and factfinder, we are not convinced that a prosecutor must be appointed.

875 F.2d 927, 933-34 (1st Cir. 1989). Thus, the First Circuit concluded that rule 42(b) does not require the appointment of an independent prosecutor in every criminal contempt action -- particularly not a contempt action where, as in this case, no challenge to the judge's impartiality exists and the evidence is not complex. In Re Grand Jury Proceedings, 875 F.2d at 934.

In United States v. Neal, the Fourth Circuit, taking a different approach, interpreted Supreme Court precedent to hold that the appointment of an independent prosecutor is required in all indirect out of court criminal contempt proceedings:

At the time of Neal's hearing, the settled law of the Supreme Court was abundantly clear that the simultaneous assumption of the inconsistent roles of prosecutor and judge transgresses our most fundamental notions of procedural fairness. In In re Murchison, [75 S. Ct. 623 (1955),] the Supreme Court held that it was error for a judge to initiate, prosecute, and adjudicate charges of indirect criminal contempt. In re Murchison, 349 U.S. 133, 137-39, 75 S. Ct. at 625-27; see also Young, 481 U.S. at 796-97, 107 S. Ct. at 2131-32 (accepting by implication that district court could not prosecute an indirect criminal contempt in ruling that the power to appoint a private attorney to prosecute indirect contempt was necessary to protect the authority of the judiciary).

101 F.3d 993, 998 (4th Cir. 1996) (footnote omitted). The Fourth Circuit in Neal concluded that it was plain error affecting substantial rights, and therefore reversible error, for the district court to fail to appoint an independent prosecutor and, instead, act as both prosecutor and judge:

Our review of the record convinces us that it is appropriate to notice the plain error of the district court. The melding of the judicial and prosecutorial functions is a fundamental error that undercuts the dispersion of power among the branches and, as a result, casts doubt on the integrity of the judicial process. To allow a district court to investigate the matter, call the witnesses for the prosecution, conduct the direct examination of them, and sit in judgment of the defendant

6

undoubtedly undermines the fairness, integrity, and public reputation of judicial proceedings.

101 F.3d at 999-1000;  see also American Airlines, Inc. v. Allied Pilots Association, 968 F.2d 523, 531 (5th Cir. 1992) (holding that the district court erred when it "sua sponte initiated the contempt proceeding, questioned the witnesses and otherwise acted as prosecutor, and then decided all factual and legal issues").

Although the Eleventh Circuit has yet to address the issue of whether the district court is required to appoint an independent prosecutor in all out of court criminal contempt proceedings, this court need not decide the issue in this case because Reed expressly waived any right to have an independent prosecutor appointed.

On January 23, 1997, at the first in a series of hearings on the contempt motion brought against Reed, Reed's lawyer told the court that he had read the Fourth Circuit's decision in Neal, and that the case required on the district court to appoint an independent prosecutor.

MR. BOTTS:  As I was reading under U.S. v. Neal in late November, the court may be under some obligation to appoint an independent prosecutor in the case if it's a criminal contempt.

THE COURT:    I think I have the authority to use the attorney in this case for one of the parties who is charging the contempt, so that's who I plan to use.

MR. BOTTS:  Right, but is that an independent one is all I am saying.

THE COURT:    I am not sure they're independent.  If you prefer to have a U.S. Attorney prosecute it, that's the normal procedure.

MR. BOTTS:  Yes, sir, I understand the court can appoint somebody.  My question is under the U.S. v. Neal is it an independent prosecutor --

THE COURT:    Well, if you challenge the right of the party's attorney to prosecute Mr. Reed I will appoint a U.S. Attorney to do it.  Maybe that's the best way to go particularly I understand you need some time.

7

Later, after the discussion over Reed's need to continue the proceedings, the district court

revisited the issue of the need for the appointment of an independent prosecutor.

> THE COURT: Since there is some concern on your part about having a party's attorney prosecute the matter, I will appoint an assistant U.S. Attorney to do so.
>
> MR. BOTTS: That was -- In my brief ability to research, I did find that case, and it did seem to indicate that it needed to be an independent prosecutor, and that was what was taken up on appeal as to whether the court could do it themselves or whether somebody else --

Following further discussions on scheduling, the district court again raised the issue of

appointment of an independent prosecutor:

> THE COURT: Since there is a concern about a party's counsel prosecuting the matter, unless you have some other feeling about it, I am going to appoint an assistant U.S. Attorney to do so.
>
> MR. BOTTS: I can talk with my client about it.
>
> THE COURT: Why don't you do that and contact Adrienne and let us know what you want. Because if you are going to raise an objection about it, I am just going to go ahead and appoint an assistant U.S. Attorney. That's the safest thing.
>
> MR. BOTTS: Yes, sir.
>
> THE COURT: That also makes it a more important case, too.
>
> MR. BOTTS: No, I don't want to do that. I wasn't trying to say that. I was just trying to preserve his rights.
>
> THE COURT: Well, if that's going to be a reservation on your part, I will appoint an assistant U.S. Attorney.
>
> MR. BOTTS: What I want to do is go back and read the case a little bit more thoroughly, and I will let the court know.

When the district court indicated its preference to appoint an assistant U.S. Attorney to prosecute

the contempt charges, Reed's counsel stated that he would discuss the matter with Reed before

8

making a decision, and that counsel would advise the court of Reed's decision at the next hearing.

When the court reconvened on February 12, 1997, Reed's counsel told the court that he and his client had decided to waive the appointment of an independent prosecutor:

> THE COURT: First, before we hear from the plaintiff, I think I will ask the defendant if they are ready to proceed, and if they have any objections to the case proceeding before me.
>
> MR. BOTTS: No sir, I would certainly not have any objection to it appearing before you. We also waived any objection to the appointment of a special prosecutor in the case, also.

The most basic rights of criminal defendants are subject to waiver. See, e.g., Peretz v. United States, 501 U.S. 923, 936 (1991) (criminal defendant can waive objection to magistrate judge's supervision of jury selection in felony trial); Levine v. United States, 362 U.S. 610, 619 (1960) (failure to object to closing of courtroom is waiver of right to public trial); Segurola v. United States, 275 U.S. 106, 111 (1927) (failure to object constitutes waiver of Fourth Amendment right against unlawful search and seizure); United States v. Bascaro, 742 F.2d 1335, 1365 (11th Cir. 1984) (absence of objection is waiver of double jeopardy defense). In this case, Reed chose to forego his right to the appointment of an independent prosecutor not merely in failing to object, but in affirmatively choosing to proceed without such appointment. Having decided after consultation with counsel, in open court, with full knowledge of the rights available to him under the Young and Neal decisions, Reed's waiver of his right to the appointment of an independent prosecutor was knowing, voluntary and effective.[*] It was Reed's choice whether to

---

[*] Reed alleges in his brief: "Counsel for Reed stated that he was waiving the requirement for an independent prosecutor and a neutral and impartial judge; the record, however, omits any reference as to whether the appellant had been apprised of his rights and personally waived the

9

proceed without the appointment of an independent prosecutor, and it was a choice that he made in consultation with counsel. See United States v. Teague, 953 F.2d 1525, 1533 (11th Cir. 1992) (en banc) ("This advice is crucial because no effective waiver of a fundamental constitutional right can exist unless there is an 'intentional relinquishment or abandonment of a known right or privilege.'" Johnson v. Zerbst, 304 U.S. 458, 462, 58 S. Ct. 1019, 1023 (1938)) (emphasis omitted). In fact, even in situations where this court prefers an on the record colloquy with a defendant before accepting a waiver, it has generally not imposed the preference as a requirement if other evidence existed in the record adequate to establish that the defendant knowingly and voluntarily waived his rights. See, e.g., United States v. Bushert, 997 F.2d 1343, 1351 (11th Cir. 1993) (waiver of right to appeal valid even in absence of colloquy with defendant if "it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver.") For these reasons, Reed effectively waived his right to challenge the absence of an independent prosecutor to prosecute the contempt proceedings.

## B. Notice

Reed also contends, again for the first time on appeal, that the district court violated procedural due process, and the safeguards of rule 42(b), when it failed to afford him proper notice and a reasonable time to prepare for the contempt proceedings. In contrast to his

---

same." Reed, however, neglects to note that he was present throughout the proceedings, including the lengthy discussions concerning whether the court should appoint an independent prosecutor; that defense counsel advised the district court that he would discuss with Reed whether to request the appointment of a prosecutor; and, that defense counsel ultimately advised the court: "We also waived any objections to the appointment of a special prosecutor in the case, also."

10

complaints on appeal, at the February 12, 1997 contempt proceeding, Reed did not object to the

adequacy of the notice of the contempt charge, even when the court specifically questioned him:

THE COURT: First, before we hear from the plaintiff, I think I will ask the defendant if they are ready to proceed, and if they have any objections to the case proceeding before me, one; and second, whether there is any question concerning the notice that's been given to the defendant as to the charges in the case.

MR. BOTTS: No sir, I would certainly not have any objection to it appearing before you. . . . I am aware of the charges although a formal complaint has never been issued.

. . . .

Basically, of course, we don't agree with what's set forth, but we know why we are here, if that's what it is, and it's about the court's order, whether he's in willful contempt of a previous order issued by the court, a consent order.

Several circuit courts of appeal have held that a contemnor may not raise on appeal the

inadequacy of a contempt notice unless the contemnor made an objection before the district

court. In re Liberatore, 574 F.2d 78, 81-82 (2d Cir. 1978) (where alleged contemnor did not

contend or even intimate in district court that the notice he had received was inadequate to

comply with requirements of rule 42(b), he waived the issue); United States v. Richardson, 638

F.2d 1189 (9th Cir. 1980) (where defendant failed to object in district court on the grounds of

lack of preparation or lack of adequate notice of the contempt hearing, he may not complain for

the first time on appeal). In failing to object in the district court to the adequacy of notice or his

opportunity to prepare for the contempt proceedings, Reed waived this issue for purposes of

appeal.

Despite his waiver, Reed's challenges fail on the merits as well. With respect to the

adequacy of notice, and his opportunity to prepare, Reed first learned of the minority

11

shareholders' request that he be held in contempt when the court served him with a copy of the minority shareholders' December 19, 1996 motion. The motion explained the relief the minority shareholders wanted: that the district court issue an order to show cause why the court should not hold Reed in contempt for having "substantially interfered with the business" of GBC when he signed and filed a bankruptcy petition on December 16, 1996, on behalf of GBC as "chairman/CEO" of the company. The district court then issued the order advising Reed of the minority shareholders' motion, and that the court would conduct a hearing on January 8, 1997, at which time the court would require Reed "to show cause why an order should not be entered holding him in contempt of the Consent Order entered in this case on September 5, 1996."

At the January 8, 1997 show cause hearing, the district court advised Reed that it would consider the contempt action as a criminal contempt (18 U.S.C. § 401), and that it would hear only the motion for injunctive relief at this first hearing and sever it from the contempt motion. The court postponed the hearing on the contempt motion to allow Reed more time to prepare and to enlist counsel specializing in criminal law.

On January 9, 1997, in the order granting injunctive relief against Reed, the district court scheduled a non-jury proceeding to determine whether Reed should be "held in criminal contempt for his willful and wanton violation" of the September 5, 1996 consent order. When the contempt proceedings reconvened two weeks later on January 23, 1997, the court granted Reed a further continuance to allow him additional time to prepare for the contempt proceedings and to decide whether to request the appointment of an independent prosecutor to assist with the proceedings.

12

After hearing evidence and argument of counsel, the court found Reed guilty of willfully and intentionally violating the September 5, 1996 consent order. As these facts establish, the court afforded Reed ample notice of contempt proceedings and repeated opportunities for additional time to prepare for the hearing. Based on the record, no doubt exists that the court afforded Reed all of the procedural due process protections and procedural safeguards of rule 42(b).

Further, Reed argues that he never received a full and fair hearing on the contempt charges. He suggests that the January 8 hearing on the injunction motion served as the hearing on the contempt motion, and that the February 12 hearing "was in reality nothing more than an effort by Reed's counsel to mitigate the punishment that would follow from the contempt." At the first hearing, on January 8, after Reed's counsel requested additional time to prepare for the contempt proceedings, the district court advised that it would hear the request on the injunctive relief at the January 8 hearing, and that it would "put off the hearing on the contempt charges." At the conclusion of the January 8 hearing, the district court granted the minority shareholders' motion for injunction against Reed, and repeated that the contempt motion would be decided later. In a written order granting the motion for injunction, the district court scheduled hearing on the contempt motion. Only after Reed had retained criminal counsel did the contempt action proceed. The court held the contempt hearing on February 12, 1997. The district court advised Reed clearly that if he admitted the contempt charges, the court would proceed immediately to the sentencing phase. When asked how he responded, Reed denied the charges. At another point in the proceedings, defense counsel again acknowledged that the court postponed a decision on the contempt motion:

MR. BOTTS:  I have the transcript from the original hearing where your honor really delayed the contempt, criminal contempt finding and went into the tro or whatever was necessary then, and so I assume that everything in that would pertain to the criminal.

After obtaining counsel's consent, the court made the transcript of the previous hearing a part of the record in the contempt proceeding.  After taking additional evidence and hearing argument of counsel, the court found Reed guilty of willfully and intentionally violating the September 5, 1996 consent order.  On May 8, 1997, the court held a sentencing hearing, at the conclusion of which the court sentenced Reed to four months' imprisonment.  Based on this record, it is difficult to hold that the February 12 proceedings was "nothing more than" a sentencing hearing.  Reed's argument in this regard is specious.

## V.  CONCLUSION

For the foregoing reasons, the district court's judgment is affirmed.

**AFFIRMED.**