[Crim. No. 20487. Feb. 7, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
PHILLIP ANTHONY CARLUCCI, Defendant and Appellant.

THE PEOPLE, Plaintiff and Respondent, v.
WALTER GEORGE LAWRENCE, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, Charles M. Sevilla, Chief Assistant State Public Defender, and Donald L. A. Kerson, Deputy State Public Defender, for Defendants and Appellants.

John K. Van de Kamp, District Attorney, Harry B. Sondheim and Barry R. Levy, Deputy District Attorneys, for Plaintiff and Respondent.

Keith C. Sorenson, District Attorney (San Mateo), and Stephen M. Wagstaffe, Deputy District Attorney, as Amici Curiae on behalf of Plaintiff and Respondent.

**OPINION**

**RICHARDSON, J.**—The issue herein presented is whether a traffic infraction hearing conducted without a prosecutor by the judge who calls and questions the witnesses, including the defendant, necessarily deprives the defendant of due process of law. We conclude that it does not. We also conclude however that, by reason of a stipulation discussed below entered into between defendants and the district attorney, the interests of justice require reversal of the conviction in this case despite the absence of constitutional error.

Both cases under consideration, consolidated below for hearing, involve motorists who were given traffic citations for driving at an excessive rate of speed. The circumstances surrounding each citation were routine and similar contacts between motorists and police officers doubtless occur many times daily throughout the state.

The factual backgrounds of the two proceedings may be briefly summarized: On November 30, 1976, in the City of Downey, defendant Walter Lawrence was cited for driving at 50 miles per hour in a 40-mile-per-hour zone in violation of Vehicle Code section 22350 which reads: "No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for weather, visibility, the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property."

On February 15, 1977, trial was held in the Municipal Court for the Downey Judicial District, County of Los Angeles. The prosecuting attorney, who would normally have been present, was obliged to leave the court to prosecute a more serious offense elsewhere. The judge called, as the only witness for the prosecution, the sheriff's deputy who had issued the citation. The deputy gave a narrative description of how he had paced defendant Lawrence's car and cited him for driving at an excessive speed. According to the settled statement on appeal the court asked only one question of the officer, that concerning the calibration of his speedometer.

Defendant Lawrence cross-examined the officer in detail about the events surrounding the citation. On several occasions the court interrupted Lawrence to advise him to confine himself to asking questions of the officer and to refrain from making statements to which the officer could not respond.

When questioning of the officer was concluded the court directed Lawrence to tell his version of events. The settled statement on appeal indicates that Lawrence began his testimony by making a lengthy statement, at one point asserting that it would be impossible to speed when a police car was right behind. According to the settled statement, "The Judge stated that it was not impossible to speed just because a police car was behind you. The defendant replied that the question had nothing to do with the facts at hand. The judge then asked again the question is anything possible. The defendant said that he guessed that there are things that are possible but in this case, he did not speed. The judge stated that the defendant had won a case before in his Court and now lost one and that now he will be even. Defendant was found guilty."

Defendant waived time for sentence and was ordered by the court to pay a fine in the amount of $10 plus $5.50 penalty assessment. Notice of appeal was filed on March 17, 1977.

On February 1, 1977, in the City of Alhambra, defendant Phillip Carlucci was given a citation for driving at 40 miles per hour in a 25-mile-per-hour zone, a violation of Vehicle Code section 22350. At trial on March 22 defendant Carlucci was unrepresented by counsel and there was no prosecutor present. The only witness for the People was the citing officer whom the judge called to the stand. In response to brief questions from the court the officer testified that he had measured defendant Carlucci driving at a speed in excess of 40 miles per hour in a

25-mile-per-hour speed zone. The court asked the officer various questions regarding the method used to measure the automobile's speed, the traffic conditions in the area, and the reaction of defendant Carlucci to being stopped. When the court concluded its questioning of the officer, defendant Carlucci conducted a brief cross-examination during which he attempted to establish that the officer's method of determining defendant's speed was inaccurate.

Defendant Carlucci then testified in his own behalf. He began with a short narrative statement to the effect that he had not exceeded the speed limit. The following exchange then took place:

"THE COURT: How fast were you going?

THE WITNESS: I said 25 at the time. I think it was.

THE COURT: Did you look at your speedometer?

THE WITNESS: I checked it, not within that time.

THE COURT: Where did you check your speed?

THE WITNESS: Before Palm [Street], by the apartment houses.

THE COURT: Is there anything else you want to tell me?

THE WITNESS: No. If it wasn't exactly 25, it was certainly not any more, in my opinion over 30 because I have to make a turn, you know. I can't turn a station wagon at 40 miles an hour.

THE COURT: Why can't you turn at 40 or slow down a little from 40 to turn?

THE WITNESS: Turn at 40 miles an hour?

THE COURT: Well, or if you're doing 40, you come up to the corner, you can let off a little bit and make the turn, can't you? In other words, I can't see anything impossible about it.

THE WITNESS: It wears down the tires. It's a station wagon. It's very hard to. So that's about all I have to say.

THE COURT: Anything else?

THE WITNESS: No. And then I don't want to go over like he said about the short distance.

THE COURT: Well, I understand. You've made your point what the distances are. The officer said he was able to catch up and make a pace, though. All right, you may step down."

At the conclusion of defendant Carlucci's testimony the court found him guilty. Carlucci requested a six-hour delay of sentence which the court granted. Approximately 20 minutes later Carlucci returned to the courtroom and stated that he wished to waive time for sentence. He stated that the court had not afforded him the opportunity to give all his testimony and make all his arguments. The court permitted defendant Carlucci to reopen his case and argue the matter further. At the completion of his additional testimony and argument, the court again found Carlucci guilty. Carlucci waived time for sentence and was ordered to pay a fine of $8 plus $5 penalty assessment. A notice of appeal was filed the same day.

Both defendant Lawrence and defendant Carlucci appealed to the Appellate Department of the Superior Court of Los Angeles County on the ground that the hearings had denied them due process of law because the judges had called and questioned the witnesses. Both appeals involved the same legal issue. They were consolidated for appellate disposition. In their response to defendants' briefs the People conceded that the records on appeal reflected reversible error in that the judges had played the dual role of judge and prosecutor. In both cases the People asked that the judgment of conviction be reversed. The appellate department held that while traffic infraction trials could be conducted without a prosecuting attorney if the court's participation is limited to the traditional role in questioning, the facts of the present cases necessitated reversal. The Court of Appeal, on its own motion, transferred the appeals to itself pursuant to rule 62(a) of the California Rules of Court. The Court of Appeal reversed both judgments, holding that "a procedure in which the judge, or any person other than a qualified representative of the proper prosecuting agency, assumes the task of calling witnesses for the prosecution questioning them and cross-examining the defendants, denies to defendants due process of law." We granted the People's petition for hearing.

Defendants contend that, as to them, there is a per se denial of due process of law when judges conducting trials of infractions, in the absence of a prosecuting attorney, call and question witnesses including the defendant. We reject this assertion and hold that traffic infraction trials may be conducted without a prosecuting attorney in attendance if the conduct of the court, including its questioning of witnesses, is fair and properly limited in scope. In the cases before us we conclude that the courts' questions were of the nature traditionally allowed and were, therefore, permissible.

The statutory authority for the court to call and question witnesses is contained in Evidence Code section 775 which provides: "The court, on its own motion or on the motion of any party, may call witnesses and interrogate them the same as if they had been produced by a party to the action, and the parties may object to the questions asked and the evidence adduced the same as if such witnesses were called and examined by an adverse party. Such witnesses may be cross-examined by all parties to the action in such order as the court directs."

Section 775 itself merely codifies traditional case law. Numerous courts including our own have recognized that it is not merely the right but the duty of a trial judge to see that the evidence is fully developed before the trier of fact and to assure that ambiguities and conflicts in the evidence are resolved insofar as possible. (See *People* v. *Bowman* (1966) 240 Cal.App.2d 358, 382 [49 Cal.Rptr. 772].) As we expressed at length in *People* v. *Rigney* (1961) 55 Cal.2d 236, 241 [10 Cal.Rptr. 625, 359 P.2d 33, 98 A.L.R.2d 186]: "A trial judge may examine witnesses to elicit or clarify testimony [citations omitted]. Indeed, 'it is the right and duty of a judge to conduct a trial in such a manner that the truth will be established in accordance with the rules of evidence.' " Similarly, as noted in *People* v. *Lancelotti* (1957) 147 Cal.App.2d 723, 730 [305 P.2d 926]: "[I]t has been repeatedly held that if a judge desires to be further informed on certain points mentioned in the testimony it is entirely proper for him to ask proper questions for the purpose of developing all the facts in regard to them. Considerable latitude is allowed the judge in this respect as long as a fair trial is indicated both to the accused and to the People. Courts are established to discover where lies the truth when issues are contested, and the final responsibility to see that justice is done rests with the judge."

The power of a trial judge to question witnesses applies to cases tried to the court as well as to a jury. (*People* v. *Murray* (1970) 11 Cal.App.3d 880, 885 [90 Cal.Rptr. 84]; see also *Martin* v. *Martin* (1947) 79

Cal.App.2d 409, 410 [179 P.2d 655].) It follows that at a traffic infraction hearing the judge neither forfeits his right nor abandons his duty to seek the truth for the reason that he is the trier of fact. To the contrary, if questions remain in his mind after the witnesses have made their statements, he should affirmatively clarify matters in order that he may render the best possible informed verdict. (See *McCartney* v. *Commission on Judicial Qualifications* (1974) 12 Cal.3d 512 [116 Cal.Rptr. 260, 526 P.2d 268].)

The principle has been well stated by Mr. Witkin in 4 California Procedure (2d ed. 1971) Trial, section 185 at pages 3005-3006, in quoting an earlier appellate opinion: "The rule that a trial judge's unwarranted interference with the handling of the case is misconduct . . . is sometimes distorted into a prohibition against any participation in the trial contrary to the desires or strategy of counsel. This is a complete misconception. 'It apparently cannot be repeated too often for the guidance of a part of the legal profession that a judge is not a mere umpire presiding over a contest of wits between professional opponents, but a judicial officer entrusted with the grave task of determining where justice lies under the law and the facts between the parties who have sought the protection of our courts. Within reasonable limits, it is not only the right but the duty of a trial judge to clearly bring out the facts so that the important functions of his office may be fairly and justly performed.' (*Estate of Dupont* (1943) 60 Cal.App.2d 276, 290 . . .)."

The same principle is echoed in Gitelson, *A Trial Judge's Credo* (1966) 7 Santa Clara L.Rev., pages 7, 13-14: "There are still some counsel and trial judges who dispute the right and duty of a trial judge to participate in the examination of witnesses. Their denial of the right and duty of a trial judge to so do is without substantial support in the law of this state. The law of this state confers upon the trial judge the power, discretion and affirmative duty, predicated upon his primary duty and purpose 'to do justice,' to, in any proceeding, whether criminal or civil, with or without a jury, participate in the examination of witnesses whenever he believes that he may fairly aid in eliciting the truth, in preventing misunderstanding, in clarifying the testimony or covering omissions, in allowing a witness his right of explanation, and in eliciting facts material to a just determination of the cause."

■ From the foregoing we conclude that the trial court at a traffic infraction hearing may call and question witnesses in the absence of a prosecutor. Such actions constitute neither a per se denial of due process nor transmute the judge into prosecutor.

Numerous public policy considerations underscore the decision we reach. For sometime it has been recognized that it is in the interests of the defendant, law enforcement, the courts, and the public to provide simplified and expeditious procedures for the adjudication of less serious traffic offenses. Inasmuch as these cases ordinarily entail the imposition of small fines, it is neither economically feasible nor warranted by the relatively limited monetary exposure of the defendant for counsel to be employed or multiple appearances to be made for arraignment and trial. As noted in *People* v. *Battle* (1975) 50 Cal.App.3d Supp. 1, 7 [123 Cal.Rptr. 636] (conc. opn. by Holmes, P. J.), "In the overwhelming majority of infraction cases the primary interest of the accused will be served by expedition in disposal . . . . [The] swift disposal of infraction cases . . . is the chief reason for classifying them as such."

We emphasized the foregoing practical considerations in *In re Dennis B.* (1976) 18 Cal.3d 687, at page 695 [135 Cal.Rptr. 82, 557 P.2d 514], where we noted ". . . the state's substantial interest in maintaining the summary nature of minor motor vehicle violation proceedings would be impaired by requiring the prosecution to ascertain for each infraction the possibility of further criminal proceedings. The chief reason for classifying some prohibited acts as infractions is to facilitate their swift disposition. [Citation omitted.] Unconstrained by the more stringent procedural requirements of a major criminal trial, municipal courts and prosecutors are free to develop innovative procedures to expedite traffic cases . . . . This type of flexibility benefits all parties: defendants gain a swift and inexpensive disposition of their cases without risk of major penalties; and the prosecution, the court system, and ultimately the public benefit because judicial and law enforcement resources are freed to concentrate on serious criminal behavior."

The courts and the Legislature have not been unaware of the penalties that may attach to an individual who is found guilty of a traffic infraction. The driver may lose his driving privileges. He may be obliged to pay higher insurance rates or be denied insurance altogether. In addition, the fines which are levied by the traffic courts, while relatively insignificant in terms of possible penalties for violations of the criminal statutes, may constitute a very real hardship for some of those obliged to pay. However, with these considerations before them, the courts and the Legislature have repeatedly evidenced their determination to keep the processing of traffic infractions free from the procedural intricacies that characterize more serious criminal proceedings.

The Legislature has specifically provided that no jury trial is to be had nor counsel appointed for defendants in infraction cases. (Pen. Code, § 19c.) Any requirement that a prosecutor be present would therefore seem contrary to the best interests of the defendant. Even in the most aggravated infraction case the potential financial penalty rarely, if ever, would equal the cost to the defendant of employing counsel and most defendants, therefore, would decline to hire counsel. If a prosecutor were required to participate in infraction hearings, the unrepresented defendant would find himself in opposition to a professional adversary, hardly to defendant's advantage.

In the absence of a prosecuting attorney the citing officer routinely takes the stand and gives a narrative description of the events leading to the issuance of the citation. The defendant will then have full opportunity to cross-examine the officer and then may himself testify, and present such other evidence as may be probative and relevant. Under these circumstances we are satisfied that a trial judge should, within proper limits, be permitted to ask questions for the purpose of clarifying ambiguities and to insure that justice is done both to the accused and to the People, all this without jeopardizing the court's ability to act in a judicious, independent, detached, and neutral manner.

In approving this practice, however, we caution that the trial court must not undertake the role of either prosecutor or defense counsel. We have recognized that "It is essential that the public have absolute confidence in the integrity and impartiality of our system of criminal justice. This requires that public officials not only in fact properly discharge their responsibilities but also that such officials avoid, as much as possible, the *appearance* of impropriety." (*People* v. *Rhodes* (1974) 12 Cal.3d 180, 185 [115 Cal.Rptr. 235, 524 P.2d 363], italics in original.) It is fundamental that the trial court in the conduct of infraction hearings must refrain from advocacy and remain circumspect in its comments on the evidence, treating litigants and witnesses with appropriate respect and without demonstration of partiality or bias. (*People* v. *Campbell* (1958) 162 Cal.App.2d 776, 787 [329 P.2d 82]; *People* v. *Huff* (1955) 134 Cal.App.2d 182, 187-188 [285 P.2d 17]; *McCartney* v. *Commission on Judicial Qualifications, supra,* 12 Cal.3d at p. 533.)

We conclude that the absence of a prosecuting attorney at the trial of an infraction offense does not result in a per se deprivation of a defendant's right of due process and fair trial. ■ While the conduct of a particular judge in calling or questioning witnesses at such a hearing

could amount to a denial of due process, examination of the records before us discloses that the judge in each of these two cases, in the tone of his questioning and in the nature of the questions posed, comported himself in a manner consistent with what should be expected of any reasonable, conscientious judge in a similar situation. There was neither the substance nor the appearance of impropriety. We therefore conclude that the defendants were not deprived of fair and impartial trials.

By reason of the People's stipulation of error referred to above, however, it would be unfair to levy fines in these cases. The judgments are therefore reversed.

Bird, C. J., Tobriner, J., Mosk, J., Clark, J., Manuel, J., and Newman, J., concurred.