[No. E007729. Fourth Dist., Div. Two. Apr. 20, 1990.]

THE PEOPLE ex rel. DENNIS KOTTMEIER, as District Attorney, etc., Petitioner, v.
THE MUNICIPAL COURT OF THE SAN BERNARDINO JUDICIAL DISTRICT OF SAN BERNARDINO COUNTY, Respondent;
JAMES J. CHARLES, JR., et al., Real Parties in Interest.

**COUNSEL**

Dennis Kottmeier, District Attorney, and Joseph A. Burns, Deputy District Attorney, for Petitioner.

Roger Meadows for Respondent.

No appearance for Real Parties in Interest.

---

OPINION

HOLLENHORST, Acting P. J.—For the third time, the People, by and through Dennis Kottmeier, in his capacity as District Attorney for the County of San Bernardino, seek relief from this court from a policy imposed by the municipal court requiring the attendance of prosecutors at the trial of traffic infractions.[1] Although we have previously declined to assume jurisdiction and required petitioner to seek his available remedies in the lower courts, we find ourselves compelled at this time to intervene.

Petitioner (hereinafter sometimes the District Attorney) filed his first petition with this court on October 3, 1989. This petition alleged that in July 1989, Judge David Merriam of respondent court notified petitioner that when he assumed the assignment of traffic trials on July 28, he would require the attendance of a deputy district attorney to represent the People.[2] Petitioner responded by requesting the cancellation of this policy, relying on *People v. Carlucci* (1979) 23 Cal.3d 249 [152 Cal.Rptr. 439, 590 P.2d 15]. Despite the intervention of Presiding Judge Anthony Piazza, this effort was unsuccessful, and on July 27, 1989, the District Attorney filed a petition for writ of prohibition with the superior court. On that same day, a copy of an alternative writ was served on respondent court and Judge Merriam, which forbade respondent from implementing its policy of requiring the presence of a deputy district attorney.

In response, at the calling of his traffic infraction calendar on July 28, 1989, Judge Merriam announced his intention to obey the alternative writ. However, he declined to permit any witnesses for the People to testify unless they were formally called by an attorney. As no deputy was present, the court called the defendants and not only allowed them to tell their side of the incidents, but affirmatively questioned them. In the case of each defendant whose "trial" was reflected in the transcript provided to this court, the municipal court accepted defendant's version and found the

---

[1] We consider this the correct way to characterize the policy of respondent court, despite its purported compliance with the order of the superior court forbidding it to compel such attendance. As will be discussed below, the court's actions in dismissing all such cases if no prosecutor appeared was a transparent effort to force petitioner to provide a deputy.

[2] Traffic trials are apparently calendared for Friday mornings.

defendants not guilty. Petitioner asserted, without denial, that 13 defendants were in fact so found not guilty on that date.

The District Attorney's efforts to obtain a revised order pending the hearing on his petition for writ of prohibition failed, although Judge Merriam eventually modified his practice to that of granting acquittals under Penal Code section 1118 in all cases in which no prosecutor was present. This continued throughout the month of August and into September of 1989. The People began filing notices of appeal on all such cases, which had passed 50 by the time the first petition was filed in this court.[3]

On September 22, the District Attorney's petition was heard by the superior court. Although no written judgment was ever presented as part of the record to this court, the superior court announced its intention to deny relief on the theory that the People's remedy by appeal in each case was adequate. The court expressed the opinion that each appeal would present a fully developed fact situation, and would also provide the opportunity for specific relief. The court noted that the original alternative writ had been effectively circumvented by the municipal court, and relied on this to show that a general order in mandate might not cover later practices or policies.

The District Attorney filed his first petition with this court on October 3, 1989, in which he sought a full review of the issues. We granted relief in only a limited sense, ordering the superior court to set aside its finding that the remedy by appeal was adequate, and directing it to hear the case on its merits.

In obedience to this order, the superior court conducted further proceedings, and issued a judgment on February 15, 1990, directing the municipal court to cease from requiring or compelling the attendance of a prosecutor at traffic infraction hearings.

With prophetic anxiety, the District Attorney again resorted to this court, seeking a broader order. We again denied the petition, but did so expressly without prejudice to future proceedings "should there be further dismissals or should the order and judgment otherwise fail to achieve a result consistent with the interests of justice." Although we were reluctant to presume that respondent would flout or deliberately circumvent the superior court's order, we hoped by our language to indicate our general agreement with the result reached.

---

[3] We are informed that by now, well over 130 such appeals have been filed by the People. We are also informed that, contrary to the superior court's belief that each appeal could conveniently be resolved with respect to its particular issues, the appellate department is awaiting this court's pronouncement of a general rule of law.

However, the instant petition was filed on March 1, 1990. Petitioner alleges that the municipal court has once again elected to comply with the letter of the order rather than its spirit, in that, while it makes no effort to compel the attendance of a deputy district attorney by the threat of contempt or other legal coercion, it has continued to refuse to allow the People's witnesses to take the stand and has continued to dismiss the infraction cases or enter judgments of acquittal.[4]

## Availability of Relief

Four individuals have been named as real parties: James J. Charles, Jr., Dominic M. Davis, Anne M. Cordaro, and Jaime Giron. Their cases were called before respondent court on February 16, 1990. In no case was a deputy district attorney present, although police officers were present to testify; in no case was any witness sworn. When it appeared that no deputy district attorney was in court, the court declined to call any witnesses and found each defendant not guilty.

■ The People may appeal "an order or judgment dismissing or otherwise terminating the action before the defendant has been placed in jeopardy. . . ." (Pen. Code, § 1466, subd. (2).) Jeopardy does not attach, as a rule, until a witness has been sworn. (*Richard M.* v. *Superior Court* (1971) 4 Cal.3d 370, 376-377 [93 Cal.Rptr. 752, 482 P.2d 664].) Although the trial court in these cases purported to make a finding of "not guilty," we think the court's actions are properly construed as dismissals under Penal Code section 1385. No evidence was taken and no finding of fact could properly have been made; it is abundantly clear that the results occurred not because the People had failed to prove guilt, but because the court refused to conduct trials.

The orders were therefore appealable, and petitioner is entitled to seek the alternative of extraordinary relief. In this case it is beyond question that relegating the People to the remedy of appeal would delay resolution of an important public issue, and add to what is already a multiplicity of appeals. (See *Hogya* v. *Superior Court* (1977) 75 Cal.App.3d 122, 129-130 [142 Cal.Rptr. 325].)

## DISCUSSION

■ Four distinct issues are presented by this petition. Does the conduct of infraction trials without the participation of a prosecutor violate a

---

[4] At some point over the last several months, Judge Ellen Brodie began to hear the traffic infraction calendar. She has expressed her solidarity with Judge Merriam on the issues of this case.

defendant's right to due process? Does it violate the requirements of Government Code 26500? Does it improperly interfere with the court's inherent power to regulate and control its own procedures, and does it place the court in the intolerable position of playing the role of prosecutor? The first question is readily answered by resort to controlling authority; the other three require a more extended analysis.

In setting up the issues, however, we must observe that both sides have used lofty legal principles as a smoke screen to some extent. As we will have occasion to note again, this case is really a contest of wills between the court and the chief prosecutor. At oral argument, counsel for respondent stressed almost exclusively the court's desire to have a prosecutor present as an aid to the pretrial disposition of cases, and it is apparent that the essential battle is over the allocation of judicial and prosecutorial resources where both sides are stretched too thin.

This, of course, is an administrative, not a legal, dispute, and one which this court cannot effectively resolve. We must therefore confine ourselves to the legal trappings of the case.

I.

Constitutional and Statutory Strictures

In *People* v. *Carlucci, supra*, 23 Cal.3d 249, the court held that there was no due process violation if an infraction hearing was held without the presence of the prosecutor. It further expressly held that no such violation existed by the fact that the trial judge called and questioned witnesses, although it cautioned that the trial judge, in such a case, must be careful to avoid any appearance of bias or advocacy. (At pp. 256-258.) However, in *Carlucci* the court did not consider the effect of Government Code section 26500.

That statute defines the duty of the district attorney, and states that he "shall attend the courts, *and within his or her discretion shall initiate* and conduct on behalf of the people all prosecutions for public offenses." The statute was amended in 1980 (Stats. 1980, ch. 1094, § 1), to add the portion italicized above.

In *People* v. *Daggett* (1988) 206 Cal.App.3d Supp. 1 [253 Cal.Rptr. 195], the appellate department of Sacramento County held that section 26500, as amended, did not require the attendance of a prosecutor at infraction trials. Relying in part on legislative history, the court ruled that the Legislature, in making the amendment, was conscious that the amended version would

grant the prosecutor discretion in appearing, as well as initiating a prosecution.[5] However, the court also pointed out that the amendments were made after the decision in *People* v. *Carlucci,* and that the Legislature was presumed to have been aware of the court's ruling that the prosecutor need not be present.

Although the language of Government Code section 26500 is certainly not free from doubt, we agree with the result reached in *People* v. *Daggett.* The phrase "attend the courts" is too vague to be of much use in interpretation; what courts? When? ■ On its face the statute then appears to grant the district attorney discretion *both* to initiate *and* conduct the prosecutions. This is undoubtedly the intention of the statute, insofar as it means that it is the district attorney's prerogative to determine whether to file charges and whether to continue a prosecution. (See *People* v. *Adams* (1974) 43 Cal.App.3d 697, 707-708 [117 Cal.Rptr. 905].) It is less clear that the statute was intended to permit the district attorney to choose when to appear for trial, or what the result of his absence should be.

We note that it has been stated that the provisions of Government Code section 26500 requiring the presence of the prosecutor "are for the benefit of the people." (*People* v. *Thompson* (1940) 41 Cal.App.2d Supp. 965, 967 [108 P.2d 105].) This suggests that there is discretion not to appear, if the district attorney is willing to take the consequences of an adverse verdict or ruling, which in most misdemeanor and felony cases would be a foregone conclusion. If the District Attorney elected not to appear at a serious felony trial involving complex issues and numerous witnesses, two things would be clear: he would be in gross dereliction of his duty to the people of the state under Government Code section 26500, and the court would be justified in dismissing the case.

However, we do not think it either necessary or proper to consider such a situation, which is not before us. In *People* v. *Carlucci, supra,* the court extensively discussed the unique nature of infraction prosecutions and the benefits to all sides of encouraging expeditious and flexible procedures. (See also *In re Dennis* (1976) 18 Cal.3d 687, 695 [135 Cal.Rptr. 82, 557 P.2d 514].) ■ ■ The prohibition against appointed counsel in infraction cases (Pen. Code, § 19c) ensures that the majority of defendants will be

---

[5] Assembly Committee on Criminal Justice, Analysis of Senate Bill No. 1890, Comments, paragraph 4: ". . . This language appears to eliminate the existing mandate that the public prosecutor conduct all prosecutions for public offenses on behalf of the people and insert in it's [sic] stead discretionary provisions. Is this the intent? Different language should be drafted to accomplish the ostensible purpose of this provision without modifying the existing mandates (i.e. 'The public prosecutor shall attend the courts and conduct on behalf of the people all prosecutions which, within his/her discretion, have been initiated'. . . ."

unrepresented, and the presence of a prosecutor would be "hardly to defendant's advantage." (*People* v. *Carlucci, supra,* 23 Cal.3d at p. 258.) We need not repeat in detail that court's recital of the practical considerations underlying the decision that such cases may be handled without the presence of a prosecutor; we need only agree and hold that petitioner's decision not to provide a prosecutor for infraction trials is not forbidden by Government Code section 26500.

## II.

### Interference With the Court's Control of Its Procedures

■ While a court unquestionably has the power to enforce an attorney's duty to appear where a commitment to do so has been made (see *In re Stanley* (1981) 114 Cal.App.3d 588, 591 [170 Cal.Rptr. 755]), the remedy is less certain where the district attorney simply declines to personally appear in a class of cases. Thus, we think the judgment by the superior court, which forbade any attempt to compel the attendance of a deputy district attorney, was correct.

Respondent argues, however, that it had the power and the right to refuse, in effect, to hear the trials in the absence of the prosecutor. It argues that it cannot in turn be forced to conduct trials without the assistance of an attorney for the People, and to assume the responsibility of ensuring that both sides fairly and completely present their cases.[6]

We agree that, applied to an extreme case, this argument is not without merit. However, as discussed above, we are not considering an extreme case, but only infractions normally processed rapidly and informally.

The evident antagonism between petitioner and at least some members of respondent court is not difficult to understand, and neither side is wholly

---

[6]That respondent court's real grievance is quite different is again suggested by remarks made by Judge Brodie. After the superior court issued its judgment, she dismissed several cases due to the absence of a prosecutor, and then made the following comments, obviously directed to the law enforcement witnesses who had not been permitted to testify:

"THE COURT: . . . You're found not guilty, sir. [¶] Officers, I want to say something to you. I would be very upset indeed if I were you and was put in the position of having the prosecutor of this county, the district attorney of this county, place so little worth on what you are doing that they won't send a deputy to court to prosecute your cases. [¶] Where is Mr. Goss? Where is Mr. Williams? Where is Miss Djanbatian? Where is Mr. Weintre? And where is Mr. Carroll? [¶] Not one of them is in Superior Court. One of them may be in Department A doing law and motion. The other four have nowhere to go on Friday mornings, no court appearances that I am aware of. [¶] And it seems to me that the elected district attorney of this county should fulfill his duty that he has been elected to perform and send people to court. [¶] We all do our jobs. You do your jobs. I do my job. And the district attorney should be doing his job."

virtuous or unreasonable. The District Attorney doubtless considers his office understaffed and overworked, and believes that his deputies may be more usefully employed in more serious cases. Respondent feels that it is being inappropriately denigrated and ignored, and that its role as the only contact many citizens have with the court system deserves more consideration by the District Attorney. (See *People* v. *Daggett, supra,* 206 Cal.App.3d at pp. Supp. 6-7, dis. opn. of Marvin, J.) However, both sides appear to forget their joint interest in both the smooth functioning of the system and the goal of achieving justice.[7]

■ Every court has certain inherent powers to control and manage the proceedings before it. (Code Civ. Proc., § 128.) However, this power "should be exercised by the courts in order to insure the orderly administration of justice" (*Hays* v. *Superior Court* (1940) 16 Cal.2d 260, 264 [105 P.2d 975]) and not as a weapon in a battle of priorities. We do not see that requiring respondent court to allow infraction proceedings to be held in the absence of a deputy prosecutor necessarily invades its powers or dignity.

### III.

■ Finally, respondent asserts its concern over being "compelled" to play the role of advocate in questioning the People's witnesses. We observe that the record in this case indicates that the court saw nothing improper in questioning defendants, and indeed there was not; it is the duty of the trial court to assist in bringing out the facts, within reasonable limits, to the end of reaching a just result. (*People* v. *Carlucci, supra,* 23 Cal.3d at p. 256; *Estate of Dupont* (1943) 60 Cal.App.2d 276 [140 P.2d 866].) In fact, Judge Merriam's practice of calling defendants and then questioning them extensively supports the inference that the present zealous concern for the court's appearance of untainted impartiality has merely been cobbled up to justify its actions.

However, we stop short of holding that respondent court must take the initiative in examining the People's witnesses, as we agree that no court should be placed in the position of appearing to assist one side over the other. This principle should be most carefully and rigorously followed where the party being questioned appears for the prosecution, to avoid the inference that the court and law enforcement are "in cahoots" and the

---

[7] Furthermore, respondent's approach has had the unfortunate result of exposing the judicial system to ridicule. We can only wince when contemplating the reactions of those members of the public who found themselves caught up in this charade. We are also sympathetic to the burdens imposed on the individual defendants against whom the People have determined to prosecute appeals, or who have been named here as real parties. For them, a trivial transgression has exposed them to the legal system at its most protracted and irrational.

result of the trial a foregone conclusion. (See generally *McCartney* v. *Commission on Judicial Qualifications* (1974) 12 Cal.3d 512 [116 Cal.Rptr. 260, 526 P.2d 268].)

As the superior court observed, there are difficulties in resolving the case in a manner which will cover all eventualities without placing unnecessary and improper strictures on either party. In attempting to do so, this court must to some extent depend on the good faith of both sides, although the unresolved, underlying basis of the dispute makes such reliance probably over-optimistic.

The municipal court may properly require the District Attorney to supply a list of witnesses for each case, for example; the court should then permit the witnesses to give a narrative recital. The court has no obligation, however, to assist the People's witnesses in presenting the case, and we recognize its continuing discretion to request the presence of a prosecutor in the unusual case.

We requested respondent and real parties to respond to the petition and held oral argument. The case is appropriate for the issuance of a peremptory writ in the first instance. (Code Civ. Proc., § 1088; *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 178-179 [203 Cal.Rptr. 626, 681 P.2d 893].)

Let a peremptory writ of mandate issue directed to the Municipal Court of San Bernardino County, directing it to vacate its orders terminating proceedings on a purported finding of "not guilty" in those actions entitled People v. James J. Charles, Jr., action No. ONM 10842; People v. Dominic M. Davis, action No. ONM 118411; People v. Anne M. Cordaro, action No. SH 592271, and People v. Jaime Giron, action No. SH 604856 and to reinstate the complaints in said action. Respondent is further directed to proceed to conduct trials in said matters in conformity with the views expressed in this opinion.

McDaniel, J., and Dabney, J., concurred.