Filed 3/26/13  Marriage of Meyer CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re the Marriage of DAVID C. MEYER and WENDY M. MEYER. | |
| DAVID C. MEYER,<br><br>        Appellant,<br><br>v.<br><br>WENDY M. MEYER,<br><br>        Respondent. | A135051<br><br>(Alameda County Super. Ct. No. HF10548203) |

Following a court trial conducted over six days, respondent Wendy Meyer was awarded sole legal and physical custody of the parties' two daughters.  Her estranged husband, David Meyer, appeals from the custody judgment.[1]  He argues that the evidence did not support vesting Wendy with sole custody of the girls and that the trial court was biased against him.  He also argues the wrong form was used when the court expressed its custody determination in a judgment.  None of his arguments have merit.

The court's custody determination was supported by evidence that David had inflicted physical abuse on Wendy and that David did not sustain his burden to show that, irrespective of such abuse, joint legal and physical custody of the girls was in their best interest.  David has failed to demonstrate that the trial court was biased against him, and

---

[1]  In the interests of clarity and brevity, we will refer to the parties by their first names.  We mean no disrespect.

1

the fact that the court recorded its custody determination in a judgment and reserved jurisdiction over possible dissolution of the marriage was not error. The judgment is affirmed.

## FACTUAL AND LEGAL BACKGROUND

Wendy and David met in 1999 and were married in 2000. They had two daughters aged 10 and 4 in November 2010, when David petitioned the superior court for exclusive legal and physical custody of them with visiting rights for Wendy. A hearing on his petition was set for March 2011. In early December 2010, Wendy moved out of the family home in Castro Valley, disenrolled the girls from school, and moved with them to her mother's apartment in Fairfield. David considered the girls' living arrangement in Fairfield with Wendy's mother inappropriate, and suggested they were subjected to improper influences of Wendy's mother and her boyfriend. While he acknowledged that Wendy provided the girls with adequate food and clothing, David was concerned that their 10-year-old daughter was engaged in self-abusive behavior and that he was not notified whenever the girls needed medical attention. He also had concerns about Wendy's removal of the girls from their school and church community in Castro Valley.

David denied that he was ever physically abusive or hit Wendy during their marriage. But there were two occasions in particular, one in 2002 and another in March 2008, when he was forced to physically defend himself from her attacks. According to David, Wendy was the physical aggressor in the incident of March 2008 just like she had been at other times during their marriage, and all he had done was try to defend himself. Wendy testified that David was the aggressor in physical confrontations between the two in 2002 and in March 2008, and on many other occasions during their marriage.

Wendy's testimony regarding the 2008 incident was corroborated by an Alameda County deputy sheriff who had responded to the Meyers' apartment after his office received a call from David. The deputy interviewed Wendy and their 10-year-old daughter and arrested David based upon his investigation. Their 10-year-old daughter generally corroborated her mother's version of events, and Wendy had injuries the deputy considered to be consistent with a victim of domestic violence.

2

Wendy also presented evidence that their 10-year-old daughter's educational needs were addressed in her new school and that she was adjusting well to the change. Her testing scores and grades were good. The four-year-old daughter was experiencing some separation anxiety from Wendy when she went to school, but it was improving. There was also evidence that their four-year-old daughter was reluctant to visit with David, and according to Wendy, she was afraid he would show up at her school. Wendy was in a therapy program for victims of domestic violence, and both girls and Wendy were in family counseling.

David presented evidence that he spent much less time with his daughters since they had moved to Fairfield. He used to spend two to three hours a day with them sharing various activities, but by the time of the hearing in this case he was seeing them twice a week for a total of nine hours. He had good visits with the girls and was able to speak with them by phone on the days they did not visit. But seeing them was difficult since Wendy had moved with them to Fairfield. David also felt the girls were harmed by the move from Castro Valley because their 10-year-old daughter was removed from her school, and both girls were taken away from their network of family and the friends they made through their church and school.

The court awarded legal and physical custody of both girls to Wendy, with weekly visits and phone calls to David. David objected to the court's intended statement of decision on the grounds: that the evidence did not warrant a conclusion that David was a perpetrator of domestic violence; that the court was biased against him because of his Christian beliefs; and that allowing the girls to live in Fairfield with their mother was not in their best interest. This timely appeal followed.

## DISCUSSION

1. *The Custody Award*

In a contested child custody proceeding, the trial court is to make an award that is in the best interest of the child. (Fam. Code, § 3040, subd. (a).)[2] When the court

---

[2] All further statutory references are to the Family Code.

determines that a parent seeking custody has perpetrated domestic violence against the other person seeking custody, there is a presumption that awarding custody to that parent is detrimental to the child's best interest. (§ 3044, subd. (a).) The perpetrator may rebut this presumption by a preponderance of the evidence. (*Ibid.*) But the custody determination is vested in the trial court's discretion taking into account all the circumstances, and we will reverse only for an abuse of that discretion. (*Keith R. v. Superior Court* (2009) 174 Cal.App.4th 1047, 1057.)

The gravamen of David's appeal is that the trial court should not have applied the section 3044, subdivision (a) presumption in this case because the evidence of this tumultuous marital relationship was "too close a call" to hold David responsible for the 2008 incident of domestic violence. Moreover, he says that even if it could apply the section 3044, subdivision (a) presumption, the court did not give enough consideration to evidence that he says showed awarding custody to Wendy was not in the girls' best interest. David points to testimony that Wendy's mother and her boyfriend were nudists, and says this evidence was not addressed by the trial court, nor did the court consider her involvement or influence in the family's marital strife. He also challenged the suitability of the apartment the girls were living in because it was section 8 subsidized housing that David considered to be in a bad neighborhood. But the court specifically concluded that no evidence was presented to show that the children's current living arrangements were "anything but wholesome or presented any type of danger." We agree that David has not demonstrated any nexus between the evidence that Wendy's mother and her boyfriend may practice nudity, and suitability of the girls' living arrangements. There is no evidence that suggests the girls are harmed by their proximity to Wendy's mother because she had witnessed or been involved in family disputes. Moreover, as the trial court observed, Wendy was taking care of the girls' educational and psychological needs and "since separation . . . acted in the best interests of the children taking into account her lack of resources and her own psychological needs."

Essentially, David would have us reweigh the evidence to reach the opposite conclusion of the trial court. But our analysis does not turn on "the presence or absence

4

of a substantial conflict in the evidence. Rather, it is simply whether there is substantial evidence in favor of the respondent. If this 'substantial' evidence is present, no matter how slight it may appear in comparison with the contradictory evidence, the judgment must be upheld. As a general rule, therefore, we will look only at the evidence and reasonable inferences supporting the successful party, and disregard the contrary showing. [Citations.] In short, even if the judgment of the trial court is against the weight of the evidence, we are bound to uphold it so long as the record is free from prejudicial error and the judgment is supported by evidence which is 'substantial,' that is, of ' "ponderable legal significance," ' ' "reasonable in nature, credible, and of solid value." ' " (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631.)

When the determination of an issue rests within the sound discretion of the trial court, we will not disturb its decision unless it is shown to be arbitrary, capricious or patently absurd. (*In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 421.) There was ample evidence supporting the court's determination to award physical and legal custody of the girls exclusively to Wendy. On this record, we cannot conclude the trial court abused its discretion when it concluded that David did not overcome the statutory presumption of section 3044, subdivision (a).

2. *Possible Judicial Bias*

David claims that judicial bias is apparent in the record because the court commented on his credibility by making a reference to his Christian faith, and by telling Wendy that she would be more credible if she answered counsel's questions directly rather than engaging in her own freestyle narrative of the events. Neither claim has merit.

In his statement of decision, the trial judge discussed the challenges to David and Wendy's credibility. He wrote: "The court has significant misgivings regarding both parties in that regard. [David's] testimonial version of the events comes across as too pat and rehearsed. It is almost as if he has practiced his answers to his attorney's questions. In addition, his continued reference to being a 'Christian,' as a means to enhance his credibility was overdone and not effective for that purpose." At this point the judge

quoted Shakespeare's Hamlet in a footnote: "The lady doth protest too much, methinks." It is hard to tell from the reporter's transcript whether David's references to his faith were motivated in part for effect. Some seem to be, such as his comment that, "I think it's where your heart is, not what you're wearing," when he testified that he wore a suit to church one Sunday. But no matter. In context, the court's reference to David's testimony about his Christianity was not the focus of the court's criticism of his credibility. The court was concerned that his answers were pat and rehearsed, and David's references to his faith merely did not help his answers appear more candid or truthful. The judge's reference to David's religion did not demonstrate bias.

Nor did the court's admonition to Wendy that she directly answer counsel's questions create any appearance of unfairness. During her cross-examination by David's counsel on the last day of testimony, the judge interrupted Wendy and the following ensued: "THE COURT: I just want to make an observation. Umm, it hurts your credibility when you don't answer questions directly. [¶] THE WITNESS: It really irritates me. [¶] THE COURT: It hurts your credibility when you don't answer questions directly. You always take a question and steer it in a direction it wasn't intended. [¶] If you want this Court to give your testimony any credibility, you need to respond to the questions and not drift off to anywhere else. [¶] If you need to explain yourself, I'm sure your attorney will allow you to do that. This will be a much more efficient hearing if you're able to do that. [¶] We're in recess."

David claims that this admonition "effectively assisted the Respondent in enhancing her credibility by following the court's direction and in apparently eliminating the need to seriously address those very difficult questions she was asked." But there was nothing improper in advising Wendy that in order to have *any* credibility she needed to answer the questions that were put to her. It is simply inconceivable that this admonition could have eliminated any requirement that Wendy address difficult questions.

It has long been settled, and "apparently cannot be repeated too often for the guidance of a part of the legal profession that a judge is not a mere umpire presiding over a contest of wits between professional opponents, but a judicial officer entrusted with the

6

grave task of determining where justice lies under the law and the facts between the parties who have sought the protection of our courts. Within reasonable limits, it is not only the right but the duty of a trial judge to clearly bring out the facts so that the important functions of his office may be fairly and justly performed. . . . For the same reason the trial judge is not to be unduly or unreasonably hampered in his control and conduct of the trial." (*Estate of Dupont* (1943) 60 Cal.App.2d 276, 290.)

David argues that before the court's admonition, Wendy's "answers devolved into making comments which seemed to express her impatience, hostility, and outright anger with either [David], his counsel, or the court proceedings," while after the admonition the court found her testimony and her credibility measurably improved. So be it. It is a judge's duty to participate in a trial in order to "fairly aid in eliciting the truth, in preventing misunderstanding, in clarifying the testimony or covering omissions, in allowing a witness his right of explanation, and in eliciting facts material to a just determination of the cause." (*People v. Carlucci* (1979) 23 Cal.3d 249, 256.) Although David's counsel may have seen a strategic advantage in allowing Wendy to evade her questions and engage in hostile narrative, the trial judge was not required to sit back and allow it.

The transcript of this hearing reveals a bitterly fought custody proceeding replete with petty bickering and disparaging allegations by both parties. The trial judge was perfectly within the bounds of his authority to exert control, and direct Wendy to answer counsel's questions if she wanted to retain any credibility. The record does not indicate any bias on the part of the trial judge.

3. *Form of Judgment*

David also claims the custody order must be reversed because the court retained jurisdiction over possible dissolution and neither party is yet seeking dissolution of the marriage. This argument has no merit. The statement of decision directs Wendy's counsel to prepare a child custody and visitation judgment and accompanying notice of entry of judgment. There is no indication in the record that the marriage was dissolved in a judgment. Wendy's brief on appeal indicates that the trial court retained jurisdiction

over, but did not decide, dissolution of the marriage.  In the event that the court improperly retained jurisdiction over possible marital dissolution, it is not an error of substance.  Nothing regarding dissolution of the marriage has yet been adjudicated.  It is the substance and effect of an adjudication that determines the rights of the parties, not the form of the decree.  (*Otay River Constructors v. San Diego Expressway* (2008) 158 Cal.App.4th 796, 801.)

## DISPOSITION

The judgment for child custody and visitation is affirmed.


_____
Siggins, J.


We concur:


_____
McGuiness, P.J.


_____
Pollak, J.

8