Filed 11/14/13  In re A.N. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re A.N., a Person Coming Under the Juvenile Court Law. | B248164 (Los Angeles County Super. Ct. No. CK95582) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>A.B.,<br><br>Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Donna Levin, Juvenile Court Referee.  Affirmed.

Grace Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

A.B. (father) appeals from a March 14, 2013 order declaring his son, A.N., a dependent of the court under Welfare and Institutions Code section 300, subdivisions (a) and (b).[1]  Father contends the court violated his due process rights by questioning I.H. (mother) directly.  Father forfeited his ability to raise the issue on appeal because he did not object at the jurisdictional hearing.  Had father objected, the court's actions still did not violate his due process rights.  We affirm the court's jurisdictional findings and dispositional orders.

## STATEMENT OF FACTS AND PROCEDURE

On September 19, 2012, the Los Angeles County Department of Children and Family Services (Department) filed a dependency petition alleging that two-year-old A.N. was a minor described by section 300, subdivisions (a) and (b).  The petition alleged domestic violence places the child at risk of harm (§ 300, subd. (a)), and parents have failed to protect the child from such harm (§ 300, subd. (b)).

A.N. was born prematurely during mother's 26th week of pregnancy.  He was discharged from the hospital eight months after birth with a tracheotomy, connected to a ventilator machine, and with a feeding tube.  By the time he was two years old, he still mostly ate through his feeding tube, but could ingest small amounts of pureed food and water by mouth.

On September 30, 2011, the police were called to the family home for domestic violence.  When the police arrived, mother was breathing hard, had a high pulse, and redness on her left forearm.  She said father had slapped and punched her.  A nurse who helped care for A.N. reported she was outside the front door and heard mother and father and sounds of a "possible struggle."  The nurse observed mother crying and saw redness on her forearm and the left side of her face.  Father reported he had been caring for A.N.

---

[1]  All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

all night and was tired. When he tried to wake mother, she started arguing with him and hit him in the lip and kicked him in the knee. Police arrested father.

At the hospital, mother reported that father has assaulted her on other occasions, but this is the first time the police have been called. She stated that father physically abuses her about twice a month, doing things like grabbing her by the hair and punching or slapping her. She believes his abuse may have caused complications with her pregnancy. She refused an emergency protective order. The district attorney ultimately decided against prosecuting father.

Mother went to a police station on September 5, 2012. The police report stated she "claimed ongoing mental and physical abuse, however would not elaborate or provide any specific information. [Mother] was uncooperative, declined a report and refused to prosecute. She left the station against advice of officers to care for her son."

On the same date, mother signed an Ex Parte Request for a Temporary Restraining Order (TRO application) against father. The request included claims that A.N. suffered from a lung disease, father smoked cigarettes around A.N., father struck mother with his fist and hands several times in A.N.'s presence, causing bruising and loss of consciousness.

On September 12, 2012, the Department received a call alleging mother was not adequately caring for A.N. A children's social worker (CSW) went to the family home and spoke with father, who expressed concern that mother did not know how to operate the medical equipment A.N. needs and does not spend time playing with A.N. He said mother would take A.N. to the maternal grandmother's home without the child's necessities or toys. The CSW also visited mother and A.N. at the maternal grandmother's home. Mother told the CSW that father verbally and physically abused her and had been arrested for domestic violence on September 30, 2011. Mother also said she had filed a TRO application and gave the CSW a copy of the notice of the court hearing scheduled for September 24, 2012. On September 14, 2012, the CSW proposed a voluntary plan in which father would move out and both parents would participate in services. Parents refused.

3

The dependency court held a detention hearing on September 20, 2012. It ordered the child detained and released to mother, who would reside with the maternal grandmother. Father had monitored visitation. Father enrolled in a domestic violence batterer's program and began individual therapy.

On November 13, 2012, the Department filed an amended petition with additional factual allegations under section 300, subdivisions (a) and (b). The original petition only referred to the domestic violence incident occurring on September 30, 2011. The first amended petition added allegations concerning mother's September 5, 2012 visit to the police station and the fact that she left the family home with A.N. on September 12, 2013, due to ongoing domestic violence.

On March 14, 2013, the dependency court held a hearing to determine jurisdiction and disposition. Neither the Department nor mother called any witnesses. Father's appointed counsel called mother and father to testify. The court posed some questions to father and recalled mother for further questioning. The court's questioning focused on the parents' claim that mother's sister wrote the TRO application, and mother did not understand what she was signing when she signed it. The court sustained the allegations under section 300, subdivisions (a) and (b), placed the child with mother, and ordered visitation and reunification services for father.

## DISCUSSION

Father's only contention on appeal is that the dependency court violated his right to due process when it recalled mother for further questioning.[2] The Department contends father forfeited the issue because he failed to object to the court's questioning at the time of the jurisdictional hearing. We agree that father forfeited his right to raise the issue on appeal. We further conclude that had the issue not been forfeited, the court acted

---

[2] Father does not argue there was insufficient evidence to support the court's jurisdictional findings or dispositional orders.

4

within its statutory authority under Evidence Code section 775 when it questioned mother.

***Father forfeited his right to raise the due process issue on appeal when he did not object to the dependency court's questions.***

As a general rule, a claim of error is forfeited on appeal if it is not raised in the trial court. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.) "The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected." (*Ibid.*) The rationale behind the forfeiture rule is that it would be "inappropriate to allow a party not to object to an error of which the party is or should be aware . . . ." (*In re Dakota S.* (2000) 85 Cal.App.4th 494, 501.) "Dependency matters are not exempt from this rule." (*In re S.B., supra*, at p. 1293; see, e.g., *In re Dakota S., supra*, at p. 502 [failure to object to lack of supervising agency's assessment of prospective guardian]; *In re Kevin S.* (1996) 41 Cal.App.4th 882, 885-886 [failure to challenge scheduling of permanency planning hearing when court determined that no reasonable reunification efforts were made].)

The forfeiture rule is not applied automatically, however. An appellate court may consider an issue to which a party did not object, if the objection would have been futile. (*People v. Anderson* (2001) 25 Cal.4th 543,587.) We have "discretion to consider forfeited claims" although that "discretion must be exercised with special care" in dependency cases. (*In re S.B., supra*, 32 Cal.4th at p. 1293.) "Because these proceedings involve the well-being of children, considerations such as permanency and stability are of paramount importance." (*Ibid.*) This court also has discretion to consider questions of constitutional import, even where the parties have forfeited their right to raise the issue on appeal. (*In re Spencer S.* (2009) 176 Cal.App.4th 1315, 1323.)

Father did not object when the dependency court recalled mother for additional questioning, nor did he object to the form or substance of any of the court's questions. By failing to object to the propriety of the court's questions, he has not preserved the

issue for our review.  Father contends it would have been futile to object to the court's questions.  Nothing in the record supports that contention.  Had father objected at the time, the court might have altered its approach, perhaps rephrasing its own questions or instructing the attorneys to ask additional questions.  In fact, the court offered all counsel the opportunity to ask additional questions.  Father did not take advantage of the offer, nor did he articulate any concern with the court's questions.

Father further argues that because he is raising a constitutional issue and the facts are not contested, this court has discretion to examine the issue in spite of his failure to object at trial.  (*In re Spencer S., supra*, 176 Cal.App.4th at p. 1323.)  Even if we were to exercise such discretion, which we decline to do in this case, father's claim fails because the dependency court did not exceed its established authority to clarify witness testimony.

***The dependency court appropriately asked questions in its role as a neutral arbiter of the facts.***

Evidence Code section 775 permits the court to "call witnesses and interrogate them the same as if they had been produced by a party to the action, and the parties may object to the questions asked and the evidence adduced the same as if such witnesses were called and examined by an adverse party.  Such witnesses may be cross-examined by all parties to the action in such order as the court directs."

It is entirely proper for a judge to ask a witness questions to develop all the facts regarding the witness's testimony.  (*People v. Carlucci* (1979) 23 Cal.3d 249, 255-256.)  The judge has "[c]onsiderable latitude" in this respect.  (*Ibid.*, quoting *People v. Lancellotti* (1957) 147 Cal.App.2d 723, 730.)  A judge has authority to question witnesses regardless of whether the judge or a jury is the fact-finder.  (*People v. Carlucci, supra*, at pp. 255-256.)  The judge is "'entrusted with the grave task of determining where justice lies under the law and the facts between the parties who have sought the protection of our courts.  Within reasonable limits, it is not only the right but the duty of a trial judge to clearly bring out the facts so that the important functions of his office may

6

be fairly and justly performed. [Citations.]' [Citation.]" (*Conservatorship of Pamela J.* (2005) 133 Cal.App.4th 807, 827.) It is a judge's duty to "assure that ambiguities and conflicts in the evidence are resolved insofar as possible." (*People v. Carlucci, supra*, at p. 255.)

Father contends the dependency court acted as an advocate rather than a neutral arbiter by questioning mother about the TRO application filed on September 6, 2012. The Department responds that the court's questions were merely to clarify whether mother had prepared the TRO application and to resolve conflicting evidence about father's actions towards mother.

The TRO application introduced into evidence by father was signed by mother and included statements regarding father's past abusive conduct. The Department's detention report also stated that mother had given the CSW a copy of the TRO, stating she had filed it. Under questioning by father's counsel, mother testified father never hit her, and she had lied to police about the alleged abuse. She testified she had signed the TRO application without understanding its contents. Both father and mother testified that mother's sister prepared the TRO application because mother's parents and sister were against their marriage. In response to questions from the dependency court about whether mother had written the TRO application, father responded. "She was not the author of those papers." The court then explained that it needed further clarification from mother: "--so all of these papers, and I am going to call the mother back on the stand because that is an interesting question. These are all under penalty of perjury and I need to know if somebody else filled out this paperwork rather than the mother. So I am going to excuse the father and call the mother back to the stand."

Father argues that because the dependency court described the TRO application as being signed "under penalty of perjury," it was acting as an advocate and even exposing mother to liability for perjury. We disagree. The court was fulfilling its duty to resolve conflicting evidence and arrive at the truth. The evidence highlighted a stark inconsistency between mother's testimony at the jurisdiction hearing, on the one hand, and her report to police in 2011, the contents of the September 5, 2012 TRO application,

7

and statements to the CSW on September 12, 2012, on the other hand. Judging from the nature of the court's questions to mother, mother was recalled to clarify her explanation of why she made statements under penalty of perjury that were in conflict with her sworn testimony. In finding jurisdiction under section 300, subdivisions (a) and (b), the court discredited the parents' testimony, specifically commenting on mother's lack of credibility: "mother was either lying at the outset of this case or she's lying now, under oath both times, both times subject to perjury."

We reject father's contention that the dependency court infringed his due process rights by acting as an advocate when questioning mother.

## DISPOSITION

The dependency court's order sustaining the petition and finding jurisdiction is affirmed.


KRIEGLER, J.


We concur:


MOSK, Acting P. J.


KUMAR, J.*

---

\*      Judge of the Los Angeles County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8