Filed 4/16/15  P. v. McCarthy CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>JAMES TIMOTHY MCCARTHY,<br><br>      Defendant and Appellant. | A138682<br><br>(Alameda County<br>Super. Ct. No. 170220) |

Appellant James Timothy McCarthy (appellant) appeals his convictions for 10 counts of aggravated sexual assault of a child, continuous sexual abuse of a child, and forcible rape of his daughter, Jane Doe.  He contends he was deprived of a fair trial because the trial court was biased and allied itself with the prosecution.  He further contends there was insufficient evidence of duress to support his convictions.  Lastly, he requests this court review sealed records to determine if the trial court properly found no discoverable material subject to disclosure as *Brady* material.[1]  We affirm.  We conclude there was no judicial misconduct and sufficient evidence supports appellant's convictions.  We also conclude the trial court did not err in denying disclosure of the sealed records.

---

[1] *Brady v. Maryland*  (1963) 373 U.S. 83.

1

FACTUAL AND PROCEDURAL BACKGROUND

*Prosecution Evidence*

Doe was 18 years old at trial. She testified that when she was six years old, appellant, her adoptive father, showed her his penis and put her hand on it. She said this happened multiple times each week. She would whine and complain that she did not want it to happen. When asked why she did it, she responded: "Because he was supposed to be my dad, and he told me to do it. If you don't do something your dad tells you to do, usually you get in trouble for it." She described her father as a disciplinarian and said that to discipline her, he would give her a time out, take something away, or sometimes she would be spanked. She complied with his requests so she would not be disciplined and because she was "afraid." She said appellant told her it was their "little secret" and asked her to promise not to tell anyone. She thought if she told anyone, she would get in trouble.

Doe was forced to perform oral sex on appellant more than once a week from the time she was eight years old until she was 15 years old. This would sometimes cause her pain because appellant would pull on her hair. When Doe was seven years old, appellant touched her vagina with "[h]is fingers. Sometimes his mouth." Doe remembered appellant inserted his fingers into her vagina when she was 10 years old. She said she performed these acts due to "fear" and it was a "matter of safety." She was afraid to tell anyone because "I didn't know what [appellant] could have done . . . "I was scared out of my mind that he would murder my mother if she found out. I was also worried he would beat me."

When Doe was 15 years old, she was the victim of a sexual assault by a stranger. She began going to therapy but did not tell the therapist about appellant's abuse. She testified she could talk about the stranger's assault because there was no fear of consequences, but she knew if she talked about appellant, the therapist could not keep it confidential. She testified she strategized ways to avoid being alone with appellant including locking herself in the bathroom.

2

When Doe began a sexual relationship with another 16-year-old, appellant became angry. Doe's mother (mother) testified that appellant "was really, really scary angry. I mean, I thought he was gonna hurt her." She testified that appellant was so enraged he was "hitting [Doe]." Doe testified appellant expressed his anger by "rap[ing]" her. He came into her room while she was dressing and dropped a red condom on the bed. She knew appellant wanted to have sex with her and she felt afraid. Appellant handed her the open condom to put on his penis and then he had sex with her.

Doe began collecting appellant's ejaculations. After appellant ejaculated in her mouth, she would spit it into a tissue and save the tissue. She collected five tissues in the box and turned them over to the police. She also included a note so "he wouldn't get away with it, even if something had happened to me." She said she had periods where she was suicidal due to the abuse. The Oakland Police Department criminologist conducted a DNA analysis of the five tissues and concluded they contained semen and sperm. Three of tissues also showed the presence of saliva. The criminologist matched the DNA on the tissue to appellant's DNA and found the profile would be expected to occur in 1 in 175 quintillion members of the population. It would be "highly unlikely" that "anyone else on this earth" could have provided the sperm.

Doe made a pretext call to appellant from the Oakland Police Department. In the call, appellant made several incriminating statements. He said, "Oh so you think I'm gonna still try to touch you right?" He said that it would not happen again but he has never "done anything to you, you did not approve of or want." Doe stated they would not have sex again and appellant said, "no" and then she asked appellant if she would have to "touch you or suck you anymore" and he said, "[n]o." He told her he did not want her to be upset about it. She asked him if it ever happened at the first house they lived in and he said no, just at "our house now" because she "had [her] own floor" and "had a lot more freedom here."

3

*Defense Evidence*

Appellant testified he never had Doe touch his penis and he never touched her vagina, other than one instance when she had a rash as a child. He said the only time his daughter ever put her mouth on his penis was when she was 16 years old. He testified that she tried to put her mouth on his penis when she was 14 years old and he told her it was not appropriate. He stated that she would try to touch his penis through his pants or flash her breasts at him to get a reaction. When Doe told him about having sex with her boyfriend, he testified he was calm, but became upset when he realized that she had left her brother alone at the Bart station. He said that he "swatted her on the behind." He hit her three times.

When Doe was 16 years old, she came to him and said she wanted to have sex with him. He said he approached her as she was lying on the bed, but then he walked away and did not have sex with her. On cross-examination, he testified he did not insert his penis into her vagina, but that "[s]he grabbed me in a way that I entered her vagina very briefly." He claimed Doe only put her mouth on his penis one time that day, but on cross-examination, he stated she sucked his penis more than once that day in order to explain his statements during the pretext call.

*Motion for Acquittal and Verdict*

At the close of the People's case, appellant moved for acquittal pursuant to Penal Code section 1118.1[2] based on insufficiency of the evidence. Appellant argued there was insufficient evidence of duress for counts two through thirteen because there was no evidence of actual force or threats. The prosecution argued duress was established by evidence of psychological coercion based upon Doe's age, the disparity in size, and appellant's role as an authority figure. As to counts two, three, and four which alleged Doe was under 10 years old at the time of the assaults, defense counsel argued her testimony was speculative as to when the incidents of oral copulation occurred, and there was insufficient evidence the acts occurred before age 10. The court dismissed count two

---

[2] Unless noted, all further statutory references are to the Penal Code.

after the prosecutor agreed there was an insufficient factual basis as to Doe's age, but found sufficient evidence for counts three and four. The court then denied the motion for judgment of acquittal as to counts three and four finding sufficient evidence to sustain the convictions.[3]

A jury convicted appellant of six counts of aggravated sexual assault of a child by oral copulation (§ 269, subd. (a)(4)), four counts of aggravated sexual assault of a child by sexual penetration (§ 269, subd. (a)(5)), one count of continuous sexual abuse of a child (§ 288.5, subd. (a)), one count of forcible oral copulation (§ 288a, subd. (c)(2)(A)), and one count of forcible rape (§ 261, subd. (a)(2).) The court sentenced appellant to a determinate term of 32 years followed by an indeterminate term of 150 years to life.

## DISCUSSION

### I. The Court Did Not Engage in Judicial Misconduct

Appellant argues he was denied his due process right to a fair trial by an impartial judge because the court "interjected herself" into the proceedings by taking "over questioning for the prosecution," expressing her "personal feelings," and assisting the prosecution. We disagree.

"Although 'the trial court has both the duty and the discretion to control the conduct of the trial' [citations], 'the Due Process Clause clearly requires a "fair trial in a fair tribunal," [citation], before a judge with no actual bias against the defendant or interest in the outcome of his particular case.' [Citations.]" (*People v. Harris* (2005) 37 Cal.4th 310, 346 (*Harris*).) "'The duty of a trial judge, particularly in criminal cases, is more than that of an umpire; and though his power to examine the witnesses should be exercised with discretion and in such a way as not to prejudice the rights of the

---

[3] The reporter's transcript does not reflect the court's ruling on counts five through thirteen but it appears the motion was denied on all counts. Appellant, however, can raise a sufficiency of the evidence claim to all counts on appeal. (See *People v. Butler* (2003) 31 Cal.4th 1119, 1126, quoting *Tahoe National Bank v. Phillips* (1971) 4 Cal.3d 11, 23, fn. 17 ["'Generally, points not urged in the trial court cannot be raised on appeal. . . . The contention that a judgment is not supported by substantial evidence, however, is an obvious exception'"].)

prosecution or the accused, still he is not compelled to sit quietly by and see one wrongfully acquitted or unjustly punished when a few questions asked from the bench might elicit the truth. It is his primary duty to see that justice is done both to the accused and to the people.'" (*People v. Raviart* (2001) 93 Cal.App.4th 258, 272, quoting *People v. Golsh* (1923) 63 Cal.App. 609, 614-615.)

A "'trial court commits misconduct if it persistently makes discourteous and disparaging remarks to defense counsel so as to discredit the defense or create the impression that it is allying itself with the prosecution.'" (*People v. Sturm* (2006) 37 Cal.4th 1218, 1233, quoting *People v. Carpenter* (1997) 15 Cal.4th 312, 353, overruled by statute on other grounds in *Verdin v. Superior Court* (2008) 43 Cal.4th 1096.) "Jurors rely with great confidence on the fairness of judges, and upon the correctness of their views expressed during trial." (*Id.* at p. 1233.) "The role of a reviewing court 'is not to determine whether the trial judge's conduct left something to be desired, or even whether some comments would have been better left unsaid. Rather, we must determine whether the judge's behavior was so prejudicial that it denied [the defendant] a fair, as opposed to a perfect, trial. [Citation.]'" (*Harris, supra,* 37 Cal.4th at p. 347.)

A.    Appellant's Claim is Waived

Where a defendant contends the court "'consistently displayed a bias in favor of the prosecution'" but never objected to the trial court's participation in the examination of witnesses, defendant has waived any claim of error. (*People v. Raviart, supra,* 93 Cal.App.4th at p. 269.) "It is settled that a judge's examination of a witness may not be assigned as error on appeal where no objection was made when the questioning occurred." (*People v. Corrigan* (1957) 48 Cal.2d 551, 556.) Here, appellant's failure to object on the ground of judicial bias forfeits the claim on appeal. (*People v. Chatman* (2006) 38 Cal.4th 344, 397; *Harris, supra,* 37 Cal.4th at p. 350; *People v. Snow* (2003) 30 Cal.4th 43, 78.)

B.    Appellant Has Not Demonstrated Judicial Bias

We consider appellant's claim of judicial misconduct on the merits and reject it. Appellant's examples fall into three categories: (1) the court was sympathetic to the

prosecution; (2) the court was antagonistic to the defense; and (3) the court overstepped its bounds during trial.

      i.      The Court's Interaction with Prosecution Witnesses

Appellant asserts the court displayed a sympathetic attitude to the victim and assisted her with her testimony. Appellant argues the court improperly commented on personal items Doe had with her in court. The court stated: "So the record should reflect that she has a Rubik's [C]ube, which is perfectly aligned. I don't know if that's just out of the package. But good going. And then a picture that she has with her. Cute dog." In response to questions about the Rubik's Cube and picture, Doe explained they are a comfort to her. The court then responded to Doe's statements that her biological father and brother can solve the Rubik's Cube, just like she can. Appellant cites no authority to support his claim that the court's comments were in any way improper. As the People point out, the court was attempting to put Doe at ease and there is nothing improper about the court being "nice" to a witness. She was an 18-year-old being asked to testify in court about molestations by her father which presented an uncomfortable and intimidating situation.[4] (See Cal. Code Jud. Ethics, canon 3B(4) ["A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity . . ."]; Cf. *People v. Sturm, supra,* 37 Cal.4th at p. 1240 [it is misconduct for a trial judge to convey to the jury disdain for witnesses and their testimony].)

Appellant contends that the court improperly clarified Doe's testimony. There are, in fact, several examples throughout the witnesses' testimony of the court clarifying dates, time periods, and other facts. Appellant does not and cannot demonstrate these clarifications are prejudicial or inappropriate. "'Numerous courts including our own have recognized that it is not merely the right but the duty of a trial judge to see that the

---

[4] Appellant also argues, without citation to authority, the court improperly referred to Doe as "my dear." While it may have been preferable not to use a term of endearment, the court only used it once, in the context of trying to put the victim at ease. This isolated incident was not prejudicial to appellant.

evidence is fully developed before the trier of fact and to assure that ambiguities and conflicts in the evidence are resolved insofar as possible.'" (*People v. Raviart, supra,* 93 Cal.App.4th at p. 270, quoting *People v. Carlucci* (1979) 23 Cal.3d 249, 255.)

According to appellant, one of these clarifications helped the prosecution establish duress. Doe testified when appellant would ask her to touch him, she would whine about it. The court clarified the time period, "Just for the record, we were talking about when you were 7. Did you whine when you were 6, as well as sort of your response?" The court's clarification was not improper. A trial court's participation in the examination of witnesses involving "questions seeking to clarify the testimony" does not constitute judicial misconduct. (*People v. Raviart, supra,* 93 Cal.App.4th at p. 270.) Here, the court's questions were "neither repetitious, disparaging, nor prejudicial." (*Id.* at p. 271; *People v. Hawkins* (1995) 10 Cal.4th 920, 947-948, overruled on other grounds in *People v. Lasko* (2000) 23 Cal.4th 101, 109-110 [a trial judge may question witnesses to clarify testimony or assist the jury in understanding the evidence].)

Appellant also argues the court improperly engaged in an extensive colloquy with Doe. In attempting to clarify Doe's testimony about disclosing the abuse to her mother and her mother calling the crisis hotline, the court asked Doe seven questions. The questions summarized and clarified Doe's testimony about the topic. "Evidence Code section 775 ""confers upon the trial judge the power, discretion and affirmative duty . . . [to] participate in the examination of witnesses whenever he believes that he may fairly aid in eliciting the truth, in preventing misunderstanding, in clarifying the testimony or covering omissions, in allowing a witness his right of explanation, and in eliciting facts material to a just determination of the cause.'" (*Harris, supra,* 37 Cal.4th at p. 350, quoting *People v. Carlucci* , *supra*, 23 Cal.3d at p. 256; *People v. Pierce* (1970) 11 Cal.App.3d 313, 321 ["The mere fact that a judge examines a witness at some length does not establish misconduct, nor does the fact that the testimony elicited by the judge's questions would probably have been elicited by counsel."].) We conclude "[t]he court's questions were neither repetitious, disparaging, nor prejudicial." (*People v. Raviart, supra,* 93 Cal.App.4th at p. 271.)

ii.     The Court's Interaction with Appellant and Appellant's Counsel

Appellant asserts the court had an antagonistic attitude toward appellant and his counsel. "A trial court commits misconduct if it persistently makes discourteous and disparaging remarks to defense counsel so as to discredit the defense or create the impression it is allying itself with the prosecution." (*People v. Carpenter, supra,* 15 Cal.4th at p. 353; *People v. Fudge* (1994) 7 Cal.4th 1075, 1107.) Here, "[w]e have read each of the alleged instances of hostility in context. They fall far short of establishing misconduct or 'betray[ing] a bias against defense counsel.'" (*People v. Carpenter*, *supra*, 15 Cal.4th at p. 353, quoting *People v. Wright* (1990) 52 Cal.3d 367, 411, overruled on other grounds in *People v. Williams* (2010) 49 Cal.4th 405, 459.)

Appellant argues the court limited any introductory testimony while appellant was on the stand, but allowed such testimony from Doe. The record does not support this assertion. Defense counsel asked appellant several introductory questions, including how long he had been married, where he met his wife, and the type of work he did. The prosecutor objected on relevance grounds when counsel asked appellant what he studied in college and the court sustained the objection. After the prosecutor objected to the details of appellant's work history as irrelevant, the court overruled the objection and allowed appellant to testify because it was "background and foundational."

Appellant also argues the court's clarifying questions during his testimony demonstrated bias. Appellant identifies two instances where the court asked specific questions clarifying the time frame in which an incident occurred, one instance where the court clarified who appellant meant when he used the term "her bedroom," and one instance where the court responded to an objection by the prosecutor that defense counsel had not posed a proper question. Appellant asserts these questions were designed to interrupt defense counsel's questioning and demonstrated the court's bias. We disagree. The record demonstrates the court asked clarifying questions about specific dates, ages, names, and time frames of other witnesses at trial including Doe, mother, and one of the investigating officers. As we have stated, a judge may ask questions to clarify witness testimony and to assure the evidence is fully developed. (*People v. Raviart, supra,* 93

9

Cal.App.4th at p. 270; *People v. Hawkins, supra,* 10 Cal.4th at pp. 947-948; *People v. Abel* (2012) 53 Cal.4th 891, 917, quoting *People v. Santana* (2000) 80 Cal.App.4th 1194, 1206 ["'[T]he court has a duty to see that justice is done and to bring out facts relevant to the jury's determination'"]; *People v. Carlucci, supra,* 23 Cal.3d at p. 255 ["'[I]f a judge desires to be further informed on certain points mentioned in the testimony it is entirely proper for him to ask proper questions for the purpose of developing all the facts in regard to them.'"].)

Appellant next asserts the court contradicted him when he stated preseason for the NFL began in September or October and preseason games were in October. When defense counsel asked: "Pre-season?," the court stated, "No. I can take judicial notice of the fact that it is in August and may be the first week of September." Defense counsel stated, "I am with the judge on that one, but that's all right." Appellant then said, "I'm sorry" and the court responded, "That's all right." While it may have been preferable for the court to avoid such distracting comments, they were not prejudicial. Our Supreme Court has held that even where a sarcastic or joking remark was improper, it does not create prejudice if it could not have had an effect of the jury's verdict. (*People v. Abel, supra,* 53 Cal.4th at p. 916.) Here, appellant asserts the court's comment was designed to demonstrate the court's "lack of belief in [appellant's] credibility." The comment could just as likely been the court's attempt to ease tension by reference to a shared area of interest. (*Id.* at p. 915 ["[A]s with the other remarks made by the court throughout the trial, the comment reflects the court's propensity for quipping whenever the opportunity arose"].)

Appellant also claims that when he began to testify about a prohibited issue, the court responded too "abruptly." During his testimony, appellant began to talk about Doe at the time of her adoption and said, "Well, she came to us fairly--." The prosecutor objected and the court said, "Whoa. I am with you now." The court told the jury counsel needed to appear in chambers before appellant responded. Outside the presence of the jury, the court advised counsel it was concerned appellant would testify Doe was abused before she came to live with appellant and defense counsel agreed. Defense counsel

10

offered to move on to another topic, but the court stated that it needed to admonish appellant directly, outside the presence of the jury. Appellant needed to understand it was "not an appropriate subject" and the court did not want to risk contaminating the jury. The court returned to the courtroom and told the jury, "I am going to need to take a quick break outside of your presence because I need to put some things on the record that are not for the jury's purview."

In accordance with its duty to control the proceedings, when it became apparent appellant was going to provide inadmissible evidence, the court interrupted appellant's testimony and conferred with counsel outside the presence of the jury. (§ 1044 ["It shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved."]; *People v. Sturm, supra*, 37 Cal.4th at p. 1237 ["The trial court has a statutory duty to control trial proceedings, including the introduction and exclusion of evidence."])

Next, appellant argues that when the court asked him about his tone of voice during a dramatic interaction with his daughter, it showed the court disbelieved his testimony. Appellant described an incident when Doe snuck up on him and put her hand on his penis and tried to put her mouth on his penis. Appellant testified that he said, "Honey, you need to leave." The court then inquired: "In the same tone you are using now?" and appellant said, "yes." The court stated, "A very calm voice; is that how you described it." Appellate counsel attempts to draw an inference that this exchange demonstrated the court "disbeliev[ed] [appellant's] testimony." We could, however, reach the opposite conclusion and find the court was attempting to assist appellant by emphasizing his calm voice. We cannot deduce the court's reason from the record and cannot conclude that the court's attempt to clarify appellant's tone was misconduct.

In passing, appellant cites *People v. Santana* (2000) 80 Cal.App.4th 1194 (*Santana*), where the Second District reversed a conviction for judicial misconduct. In *Santana*, the trial court asked extensive questions of the defense witnesses and belabored

11

points of evidence that were adverse to Santana taking "on the role of prosecutor rather than that of an impartial judge." (*Id.* at p. 1207.) Defense counsel objected multiple times to both the court's questioning of witnesses and using facial expressions that indicated the court did not believe the appellant. The *Santana* court held the trial court "intervened as an adversary to such an extent" to constitute misconduct, and explained the "record before us reveals the trial court repetitiously, disparagingly and prejudicially questioned defense witnesses[.]" (*Ibid.*) "By continuing this adversarial questioning for page after page of reporter's transcript, the trial court created the unmistakable impression it had allied itself with the prosecution in the effort to convict Santana. These instances of impropriety are so egregious as to require reversal of Santana's conviction." (*Ibid.*)

Unlike *Santana*, we do not find the court was allied with the prosecution or biased against appellant or defense counsel. On appeal, appellant fails to cite examples where the court made rulings favorable to the defense or assisted during appellant's testimony. At one point during cross-examination of Doe, the prosecutor objected that defense counsel had mischaracterized Doe's testimony. The court sustained the objection and provided a detailed explanation to defense counsel and then stated, "But I understand what you're getting to and I just think the way it is characterized I am just going to sustain it." Counsel stated he understood and the court replied, "You got it. We just have to get it in the right form." At another instance, during the direct examination of appellant, the court sustained an objection by the prosecutor to a question about Doe manipulating her brother. After a few additional questions, the court stated, "I am going to reverse my ruling" and explained the testimony was relevant to appellant's state of mind. (*People v. Raviart*, *supra*, 93 Cal.App.4th at pp. 271-72 ["Defendant contends the trial court "'consistently displayed a bias in favor of the prosecution'" but offers no concrete example of any such bias, and we find none ourselves."].)

Finally, at the sentencing hearing the court complimented both counsel on the record: "Counsel, I really want to commend each of you for trying what I will call an admirably professionally tried and competently tried case for both the People, as well as

12

for the defense. [¶] You have a lot of legal acumen, both of you. Clearly your experience in trying cases shows, but your professionalism and your respect that you showed to one another and to the Court in this sensitive type of a case is absolutely noted by the Court, and it really has been an honor for me as the judge to have both of you in this courtroom to try this matter." (See *People v. Wright* (1990) 52 Cal.3d 367, 411, overruled on other grounds in *People v. Williams* (2010) 49 Cal.4th 405, 459 [finding no merit to appellant's contention that the judge was biased against the appellant or defense counsel where "the trial court voiced considerable praise for counsel's abilities and performance."].)

       iii.     The Court Did Not "Overstep" its Role

Appellant asserts the court overstepped its bounds by questioning witnesses and providing explanatory rulings restating witness testimony. The court asked questions of all six witnesses. As detailed in the previous two sections, many of these questions were to clarify facts for the jury. One example appellant provides is during the testimony of the criminalist, the court asked several clarifying questions. The court stated, "For those of us who took biology a long time ago, I just want to make sure we are all following you" and then asked about the DNA typing of epithelial cells. Later the court asked the criminalist to explain what alleles are. When the witness identified the match of appellant's profile to the examined cells from the tissues as 1 in 175 quintillion, the court asked, "It is like 18 zeros?" When the witness stated the probability as 1 in 127 quintillion, the court asked if the earth has less people and the witness said the earth has 7 billion people and the court asked if this number is greater than that. We do not need to go through a myriad of examples because we conclude that the court asked questions of both prosecution and defense witnesses equally. (Cf. *People v. Sturm, supra,* 37 Cal.4th at p. 1241.) The court's questions were limited in quantity and sought only to clarify each witnesses' testimony. We have "thoroughly reviewed the transcript of the trial and each instance of the trial court's participation in the questioning of witnesses, and we are satisfied that the trial court's involvement did not constitute misconduct." (*People v. Raviart*, *supra*, 93 Cal.App.4th at p. 271.)

13

Appellant cites two instances where the court summarized Doe's testimony in asking a question or ruling on an objection. The court summarized Doe's testimony about why she remembered the first time she orally copulated appellant and asked Doe if the court's summary was correct. In another exchange, the prosecutor asked Doe if she feared there would be consequences if she did not perform sex acts with appellant when she was 12 or 13 years old. Doe replied yes and the prosecutor asked, "What did you think might happen?" Defense counsel objected to the question as "[a]sked and answered" and the court overruled the objection and stated that an earlier response was not referencing Doe at age 12 or 13. The court stated, "I know she has described the safety issue, but I think more specifically he is asking, What did you think, in fact, would occur. I know she has described some things when she was at 6-ish and 7, but I don't know that we have 12 and 13. It's overruled." The prosecutor asked a few questions about her safety concerns at ages 12 and 13 and Doe seemed not to understand the questions. The court then interjected, "She did say that she felt there was a safety issue, she felt in terms of trying to get out of the situation, she needed to tell someone, and she was scared out of her mind that the [appellant] might murder her mother, that he would beat her if she went about it the wrong way. So that is part of the testimony now, Counsel."

We do not endorse the trial judge's explanatory rulings restating testimony. "[W]e would not endorse all of the trial court's questioning quoted above and, indeed, would find some of it inappropriate. On the facts of this case, however, we find no prejudice." (*Harris*, *supra*, 37 Cal.4th at p. 350.) While we find that some of the court's comments "would have been better left unsaid,'" we do not believe the court's behavior "'was so prejudicial that it denied [defendant] a fair, as opposed to a perfect, trial.'" (*People v. Snow, supra*, 30 Cal.4th at p. 81, quoting *United States v. Pisani* (1985) 773 F.2d 397, 402.)

The court was actively engaged in the trial but did not express its personal beliefs or exhibit bias toward appellant. "A careful examination of the record convinces us that the judge's questions were not a guise for conveying to the jury the court's disbelief in

14

defendant's evidence but were asked to get the truth established, and that they fairly and impartially brought out relevant and material testimony." (*People v. Rigney* (1961) 55 Cal.2d 236, 244.)

C.      Appellant Cannot Demonstrate Prejudice

The Supreme Court has applied the standard of *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*), to analyze prejudice in like circumstances. (*Harris, supra,* 37 Cal.4th at pp. 350-351.) Under the *Watson* standard, reversal is required if it is reasonably probable a different outcome would have resulted in the absence of the misconduct. Here, the evidence of appellant's guilt was overwhelming. Doe testified to years of abuse and provided clear testimony about the types of abuse beginning at age six. She collected appellant's ejaculations in tissues and saved them. The criminologist testified the sperm contained appellant's DNA. In the pretext call, appellant admitted the abuse by telling Doe she would no longer have to touch him, suck him, or have sex with him. Appellant admitted when Doe was 16 years old, she performed oral sex on him and his penis "entered her vagina very briefly."

Further, we presume the jurors followed the court's instructions and decided the case based on the evidence before them. (*Harris, supra,* 37 Cal.4th at p. 350.) The court instructed the jury: "It is not my role to tell you what your verdict should be. Do not take anything I said or did during the trial as an indication of what I think about the facts, the witnesses, or what your verdict should be." It is not reasonably probable that the jury would have reached a different verdict in the absence of the court's participation in the trial. (*Id*. at p. 347 [some of trial judge's questions to defendant were inappropriate, but not prejudicial because the evidence of guilt was strong].)

II.  Duress

Appellant contends there was insufficient evidence of duress for his convictions on counts three through fourteen because appellant never threatened Doe to get her to agree to the sexual acts. We disagree.

In reviewing a claim of insufficiency of the evidence of duress, we determine whether, on the record as a whole, any rational trier of fact could find appellant guilty

15

beyond a reasonable doubt.  (*People v. Manibusan* (2013) 58 Cal.4th 40, 87, citing *People v. Zamudio* (2008) 43 Cal.4th 327, 357.)  "[W]e review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence."  (*Ibid*.)

The convictions for aggravated sexual assault of a child under section 269 reference section 288(a) for oral copulation and section 289 for sexual penetration.  These two sections require the sexual acts be committed "against the victim's will by means of force, violence, duress, menace or fear of immediate and unlawful bodily injury."  (§§ 288, subd. (c)(2)(A), 289, subd. (B).)  Duress is defined as "a direct or implied threat of force, violence, danger, or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to perform an act which otherwise would not have been performed, or acquiesce in an act to which one otherwise would not have submitted.  The total circumstances, including the age of the victim, and his or her relationship to the defendant, are factors to consider in appraising the existence of duress."  (§ 261, subd. (b).)  Other pertinent factors include threats to harm the victim, physically controlling the victim, and warning the victim that revealing the molestation would jeopardize the family.  (*People v. Cochran* (2002) 103 Cal.App.4th 8, 14 (*Cochran*).)  That an appellant does not use force or overt threats does not prevent a finding of duress because the victim's testimony should be considered in light of her age and relationship to the appellant.  (*Ibid.*)

Appellant claims duress is determined under an objective standard based on the appellant's wrongful act, not the victim's response to it.  (*People v. Soto* (2011) 51 Cal.4th 229, 246 (*Soto*) [holding the victim's consent is not a defense to the crime of lewd acts on a child under age 14 under section 288 and has no effect when the lewd acts are committed by force, violence, duress, menace, or fear].)  The People argue that the objective test only applies to violations of section 288 and not to violations of section 269 as charged here, because section 269 contains the language against the victim's will allowing for the court to look at the victim's response.  We need not resolve this issue because, as detailed below, there was sufficient evidence appellant's actions created a

16

"'direct or implied threat of force, violence, danger, *hardship* or retribution sufficient to coerce" Doe to acquiesce to his sexual demands and that she did so out of "fear" and for her "safety." (*Soto, supra,* at p. 246 [the jury could find duress without overt threats based on the "inherent imbalance of power in an encounter between a child and an adult bent on sexual conduct"].)

Appellant relies on *People v. Espinoza* and *People v. Hecker*, where two courts concluded fathers' molestations of their daughters were not accomplished by duress. (*People v. Espinoza* (2002) 95 Cal.App.4th 1287 (*Espinoza*); *People v. Hecker* (1990) 219 Cal.App.3d 1238 (*Hecker*).) In *Espinoza*, defendant molested his daughter on multiple occasions. The daughter was "'too scared to do anything'" and she was afraid defendant "'would do something'" if she reported what happened. (*Espinoza*, *supra*, at p. 1293.) The court, relying on *Hecker*, held that the daughter's fear, without more, did not establish duress. In *Hecker*, the court found no duress where a stepfather molested his 13-year-old stepdaughter and told her not to reveal the molestations because it would hurt his marriage and career. (*Hecker, supra,* 219 Cal.App.3d at p. 1242.) The victim admitted she was not afraid stepfather would harm her but she felt "'pressured psychologically.'" (*Id.* at p. 1250.) The *Hecker* court held that psychological coercion without more does not establish duress. (*Id.* at pp. 1250-1251.)

This argument that "'[p]sychological coercion' without more does not establish duress'" has been rejected by several courts.[5] In the context of a family member with a young victim the "very nature of duress is psychological coercion." (*Cochran, supra,* 103 Cal.App.4th at p. 15; *People v. Senior* (1992) 3 Cal.App.4th 765, 775 ["duress involves psychological coercion"]; *People v. Superior Court* (*Kneip*) (1990) 219 Cal.App.3d 235, 238 (*Kneip*) [psychological coercion can amount to duress].)

This case is more akin to *Cochran*, where the court found sufficient evidence of duress where a father was convicted of forcible lewd conduct on his nine-year-old daughter. (*Cochran, supra,* 103 Cal.App.4th at p. 12.) The daughter testified she was not

---

[5] In *Cochran*, the Fourth District, which decided *Hecker*, disapproved of this language, finding it "overly broad." (See *Cochran, supra,* 103 Cal.App.4th at p. 15.)

afraid of her father but her father told her not to tell anyone because he would get into trouble and go to jail. (*Ibid*.) The court noted that even though the defendant did not beat or punish her, he still coerced her into performing the various sex acts. (*Id.* at p. 15.) *Cochran* held the daughter was a "vulnerable and isolated child who engaged in sex acts only in response to her father's parental and physical authority." (*Ibid*.) Given the age and size difference between defendant and the victim, their father-daughter relationship, and the implicit threat that she would break up the family if she did not comply, there was sufficient evidence of duress. (*Id.* at p. 16; see also *People v. Senior*, *supra*, 3 Cal.App.4th at p. 775 [finding duress where a father molested his 14-year-old daughter because the defendant was the victim's father and an authority figure to her; defendant threatened to hit her; and he told her that if she did not submit to the molestation that it could result in a divorce, thus jeopardizing the family unit].)

In *People v. Veale*, the court held there was sufficient evidence of duress where the defendant molested his seven-year-old stepdaughter. (*People v. Veale* (2008) 160 Cal.App.4th 40 (*Veale*).) The stepdaughter testified that although defendant never threatened her, she was afraid to tell her mother because defendant might hurt her or do something to her mother. (*Id.* at pp. 44-45.) She stated the defendant did not threaten her or use physical force and that on one occasion, when defendant asked her to put her mouth on his penis, she got mad and threw clothes around the room. (*Id.* at p. 46.) The court found that although defendant never threatened the stepdaughter, numerous factors established duress: defendant was an authority figure in the home; the stepdaughter feared defendant might harm her or her mother; the stepdaughter's young age; and the difference in size between defendant and the stepdaughter. (*Id.* at p. 47.)

The factors identified in *Cochran* and *Veale* are present here. The abuse began when Doe was very young, only six years old, and continued until appellant was arrested when she was 16 years old. Appellant was Doe's father and an authority figure in the home. When Doe testified why she acquiesced to her father's abuse, she stated: "Because he was supposed to be my dad, and he told me to do it. If you don't do something your dad tells you to do, usually you get in trouble for it." She described her

18

father as a disciplinarian and said that to discipline her, he would give her a time out, take something away, or spank her.

Appellant argues there was no evidence of any negative consequences when Doe refused to submit to her father's requests. But this does not disprove duress. (See *Veale, supra*, 160 Cal.App.4th at pp. 44-45.) Appellant exercised authority and power over Doe and could discipline her. (See *Kneip, supra,* 219 Cal.App.3d at p. 239 [where the defendant is a family member and the victim is young, "the position of dominance and authority of the defendant and his continuous exploitation of the victim" is relevant to establishing duress]; see also *Cochran, supra,* 103 Cal.App.4th at p. 15 [finding duress where the victim was a "vulnerable and isolated child who engaged in sex acts only in response to her father's parental and physical authority"].) Doe testified she complied with his requests so she would not be disciplined and because she was "afraid."

There was a substantial age difference between Doe and her father. When the abuse began Doe was 6 and appellant was 41 years old. There was also a size difference. Doe was an "average" size child and appellant was 5'8" tall and weighed approximately 150 to 160 pounds when Doe was a child. The age of the victim and her relationship to appellant are factors to be considered in appraising the existence of duress. (See *People v. Pitmon* (1985) 170 Cal.App.3d 38, 51 ["We note that at the time of the offenses, [the victim] was eight years old, an age at which adults are commonly viewed as authority figures. The disparity in physical size between an eight-year-old and an adult also contributes to a youngster's sense of his relative physical vulnerability."].)

Doe believed that disclosing the abuse would jeopardize her family. Like the victim in *Cochran*, Doe testified appellant told her it was their "little secret" and asked her to promise not to tell anyone. "A simple warning to a child not to report a molestation reasonably implies the child should not otherwise protest or resist the sexual imposition." (*People v. Senior*, *supra*, 3 Cal.App.4th at p. 775.) Doe testified if she told anyone, she would get in trouble. Doe's participation was motivated by "fear" and she described it as a "matter of safety." She was afraid to tell anyone because " I didn't know what [appellant] could have done." She said, "I was scared out of my mind that he would

19

murder my mother if she found out. I was also worried he would beat me." Both Doe and her mother testified to appellant's angry and physical response when Doe began a sexual relationship with her boyfriend. Doe's mother testified that appellant "was really, really scary angry. I mean, I thought he was gonna hurt her." She testified that appellant was "hitting [Doe]." Doe testified that appellant expressed his anger by "rap[ing]" her.

The evidence amply supports a finding of duress. Doe was abused by her father, an authority figure in the home, beginning at the age of six. When a victim is young and is molested by her father in the family home, "in all but the rarest cases duress will be present." (*Cochran, supra,* 103 Cal.App.4th at p. 16, fn. 6.) We conclude that given the father-daughter relationship, appellant's position of authority in the family, the difference in age and size between appellant and Doe, appellant's instruction to keep the abuse a secret, and Doe's testimony about her ongoing fear, there is sufficient evidence to support appellant's convictions on all counts.

III. Doe's Psychiatric Records

Appellant requests this court review the sealed records from Doe's therapy sessions to determine if the trial court ruled correctly there was no discoverable material that needed to be disclosed to the defense.

Before trial, defense counsel subpoenaed Doe's records from her therapy sessions following the 2009 sexual assault by a stranger. The packet of psychiatric records was reviewed by a judge before the preliminary hearing. The prosecution requested the trial judge review the records to determine if there was any discoverable material. Defense counsel asked that the court disclose any impeaching or potentially exculpatory material under *Brady v. Maryland*, *supra*, 373 U.S. 83. The court reviewed the records in camera and stated: "there is nothing in the records I see as *Brady*" and nothing that would preclude defense counsel from asking Doe about whether she disclosed her father's abuse to her therapist. The court held a further hearing to determine if defense counsel could question Doe about whether she specifically told the psychotherapist about abuse by her father. The court reiterated its finding: "I don't find that the records are essential to the

20

defendant's right to confrontation as it is now presented . . . [¶] I am ruling that the records won't be disclosed."

An appellate court's role is to review the confidential records that were not disclosed by the trial court "to determine whether they were material and should have been disclosed." (*People v. Martinez* (2009) 47 Cal.4th 399, 453.) We have reviewed Doe's sealed therapy records in camera and conclude the undisclosed information was not material to defense and the trial court did not err in denying disclosure.

DISPOSITION

The judgment is affirmed.

_____

Jones, P.J.


We concur:


_____

Needham, J.


_____

Bruiniers, J.